872 F.2d 1555
 HAITIAN REFUGEE CENTER, INC., a not-for-profit corporation,
Roman Catholic Diocese of Palm Beach, Marie Gizele Angrand,
Germaine Cadet, Rosita Delva, Dieumercie Desir, Joseph
Saintil Dieudonne, Gerard Henry, Marie France Jean-Philippe,
Novamise Julien, Francklin Joseph, Sylvia Lindor, Plaintiffs-Appellees,
v.
Alan C. NELSON, Commissioner of Immigration and
Naturalization Service, Perry Rivkind, District Director,
Immigration and Naturalization Service, District Office
Number 6, Kenneth Pasquarell, District Director, Immigration
and Naturalization Service, District Office Number 26,
William Chambers, Director, Immigration and Naturalization
Service Regional Processing Facility for the Southern
Region, Immigration and Naturalization Service, Department
of Justice, Richard Norton, Associate Commissioner of
Examination, Immigration and Naturalization Service,
Defendants-Appellants.
 No. 88-5934.
 United States Court of Appeals,
Eleventh Circuit.
 May 23, 1989.
 
 Allen W. Hausman, Office of Immigration Litigation, Civil Div. Washington, D.C., for defendants-appellants.
 David V. Bernal, Office of Immigration Lit. Civ. Div., Washington, D.C., for Alan C. Nelson.
 Ira J. Kurzban, Kurzban, Kurzban & Weinger, Cheryl Little, Haitian Refugee Center, Inc., Miami, Fla., for plaintiffs-appellees.
 Robert A. Williams, Florida Rural Legal Services, Inc., Immokalee, Fla., Michael Guare, Florida Rural Legal Services, Inc., Bartow, Fla., for Rosita Delva, Hector Trejo Tamayo, Juan Tamayo Vega, et al.
 Niels W. Frenzen, Public Counsel, Los Angeles, Cal., for amicus curiae American Immigration Lawyers Ass'n.
 Appeal from the United States District Court for the Southern District of Florida.
 Before RONEY, Chief Judge, VANCE, Circuit Judge, and KAUFMAN*, Senior District Judge.
 VANCE, Circuit Judge:
 
 
 1
 This action was filed on June 13, 1988 on behalf of the Haitian Refugee Center, the Migration and Refugee Services of the Roman Catholic Diocese of Palm Beach, Florida, and seventeen applicants for temporary residence under the Special Agricultural Worker ("SAW") program provided for in section 210 of the Immigration and Nationality Act ("INA") (codified as amended by the Immigration Reform and Control Act of 1986 ("IRCA"), Pub.L. No. 99-603, 100 Stat. 3359, 3417 at 8 U.S.C. Sec. 1160 (Supp.1986)). Plaintiffs sought declaratory, mandatory and injunctive relief for themselves and a class of persons who have applied for or who will apply for temporary lawful residence status under the SAW program and who have been denied or who will be denied SAW status as a result of defendants' allegedly unlawful practices.[1]
 
 
 2
 Plaintiffs contended that a number of system-wide practices employed by INS officials in processing applications resulted in the improper denial of thousands of applications for SAW status. After an extensive hearing at which the parties presented testimony and offered evidence the district court certified the plaintiff class, ruled that it had jurisdiction and granted plaintiffs' motion for preliminary injunction. The court's order requires defendant to reopen cases in which: (1) the notices of denial were defective; (2) the INS considered evidence adverse to the applicant without the applicant's knowledge; and (3) the application was adjudicated under an incorrect burden of proof. Appellants do not challenge these provisions of the district court's order. They take issue only with paragraphs (6) through (8) of the injunction, which provide:
 
 
 3
 (6) The Legalization Offices shall maintain competent translators, at a minimum, in Spanish and Haitian Creole, and translators in other languages shall be made available if necessary;
 
 
 4
 (7) The INS shall afford the applicants the opportunity to present witnesses at the interview including but not limited to growers, farm labor contractors, co-workers, and any other individual who may offer testimony in support of the applicant;
 
 
 5
 (8) The interviewers shall be directed to particularize the evidence offered, testimony taken, credibility determinations, and any other relevant information on the form I-696.
 
 
 6
 Haitian Refugee Center, Inc. v. Nelson, 694 F.Supp. 864, 881 (S.D.Fla.1988). Appellants also contend that the district court lacked jurisdiction.
 
 I. Statutory Background
 
 7
 The Special Agricultural Workers program was promulgated as part of the Immigration Reform and Control Act of 1986. The law establishes a seven-year program for the adjustment and admission of foreign agricultural workers to meet the special labor needs of American growers of perishable commodities. See H.R.Conf.Rep. No. 99-1000, 99th Cong., 2d Sess. 95, reprinted in 1986 U.S.Code Cong. & Admin.News 5649, 5840, 5850-51. The program directs the Attorney General to adjust the status of any qualifying alien to that of an alien admitted for temporary residence. To be eligible for the program, the alien must have applied for adjustment between June 1, 1987 and November 30, 1988 and establish that she is otherwise admissible to the United States as an immigrant. She is further required to demonstrate that she has resided in the United States and has performed seasonal agricultural services for at least ninety man-days during the twelve-month period ending on May 1, 1986. See 8 U.S.C. Sec. 1160(a)(1). An alien who is granted temporary residence under the SAW program is ultimately eligible for admission as a permanent resident. Id. Sec. 1160(a)(2).
 
 
 8
 The application process begins at the local Legalization Office ("LO") of the INS. The LO reviews each application for completeness and conducts an interview of the applicant. 8 C.F.R. Sec. 210.2(c)(2)(iv). Based on the interview, the adjudicator may deny the application or make a recommendation that the application be approved or denied. Where a recommendation is made, the reasons for the recommendation are recorded on the "I-696" worksheet, which accompanies the application through the remainder of the process. The completed case file is then forwarded to one of four regional processing facilities ("RPF") for final review and decision. 53 Fed.Reg. 10065 (to be codified at 8 C.F.R. Sec. 210.1(p)). A denial of the application by either the LO or the RPF may be appealed to the Administrative Appeals Unit. 8 C.F.R. Sec. 103.3(a)(2)(iii).[2] The Administrative Appeals Unit is the final level of administrative review, id; judicial review of an application for SAW status is available only in the context of review of an alien's exclusion or deportation order. 8 U.S.C. Sec. 1160(e)(3).
 
 
 9
 At the LO, the interviewing officer must determine whether a completed application is "nonfrivolous." Id. Sec. 1160(d)(2).[3] The regulations initially restricted denial at the LO level to cases where "the alien clearly fails to meet statutory requirements or the alien admits fraud or misrepresentation in the application process." 8 C.F.R. Sec. 103.1(n)(2). On March 29, 1988 the regulations were amended to permit district directors at the LO level to deny all ineligible applications to ensure that provisional employment authorization is not issued inappropriately. See 53 Fed.Reg. 10062, 10064 (1988).
 
 
 10
 The SAW applicant must prove by a preponderance of the evidence that she worked the requisite ninety man-days[4] of seasonal agricultural services. She may meet this burden by "producing sufficient evidence to show the extent of that employment as a matter of just and reasonable inference." 8 U.S.C. Sec. 1160(b)(3)(B)(iii). The burden then shifts to the Attorney General "to disprove the alien's evidence with a showing which negates the reasonableness of the inference to be drawn from the evidence." Id. To meet her burden of proof, the applicant must present evidence of eligibility independent of her own testimony. 8 C.F.R. Sec. 210.3(b)(2). "Affidavits and personal testimony by an applicant which are not corroborated, in whole or in part, by other credible evidence (including testimony of persons other than the applicant) will not serve to meet an applicant's burden of proof." 8 C.F.R. Sec. 210.3(b)(3). Where the applicant's employer or labor contractor has met its statutory obligation to maintain proper payroll records,[5] the applicant may meet her burden of proof through production of these records. 8 U.S.C. Sec. 1160(b)(3)(B)(ii). The burden may also be met through the submission of affidavits "by agricultural producers, foremen, farm labor contractors, union officials, fellow employees, or other persons with specific knowledge of the applicant's employment." 8 C.F.R. Sec. 210.3(c)(3). The affiant must furnish "a certified copy of corroborating evidence or state the affiant's willingness to personally verify the information provided." Id.
 
 II. Facts
 
 11
 The interview at the LO constitutes the only face to face encounter between the applicant and the INS allowing for the assessment of the applicant's credibility. The credibility of the applicant is particularly important where documentary evidence of the applicant's employment history is lacking. As the district court recognized, agricultural employers and labor contractors often fail to maintain accurate employment records. See infra n. 5. Workers are frequently paid in cash by labor contractors whose lists of employees are incomplete.[6]
 
 
 12
 Despite the importance of the interview, the INS does not record or prepare a transcript. In cases involving inadequate documentation of work history, the I-696 worksheet frequently includes the only factual findings on which the RPF bases its decision. These worksheets, however, often contain very little information about the interview. The worksheets of appellees Angrand and Dieudonne, for example, who were recommended for approval by the LO and were denied without explanation by the RPF, were completely blank.
 
 
 13
 The regulations contemplate the presentation of witnesses in support of an alien's application. "Affidavits and other personal testimony by an applicant which are not corroborated, in whole or in part, by other credible evidence (including testimony of persons other than the applicant) will not serve to meet an applicant's burden of proof." 8 C.F.R. Sec. 210.3(b)(3). When affidavits of persons knowledgeable about the applicant's employment history are offered, see 8 C.F.R. Sec. 210.3(c)(3), the regulations require the affiant to furnish "a certified copy of corroborating records or state [his] willingness to personally verify the information provided." Id. (emphasis added). The district court found that during the first months of the program, affidavits sufficed to corroborate the applicants' claims of employment. Haitian Refugee Center, Inc. v. Nelson, 694 F.Supp. at 871. Suspicion of widespread fraud in the application process, however, led to the LO's decision to deny many applications accompanied only by affidavits.[7] These developments enhanced the importance of live witnesses to the application process. Testimony at trial suggested that although the INS's general policy is to permit the testimony of witnesses, on some occasions applicants had been prevented from presenting witness in their behalf. There was also evidence that some LOs disallowed witness testimony as a rule.
 
 
 14
 Few applicants for SAW status speak English. An INS survey of applications received in the Miami district between August 1 and August 24, 1988 indicated that ninety percent of applicants spoke either Spanish or Haitian Creole. The INS does not provide interpreters at SAW interviews; some LOs, however, have bilingual employees who assist non-English speaking applicants. The INS does not investigate the qualifications of interpreters provided by the applicants. The record of the interview neither identifies the name of the interpreter nor indicates whether an interpreter was used.
 
 III. Jurisdiction
 
 15
 Appellants challenge the district court's assertion of jurisdiction on the ground that under section 210 of the INA the courts of appeals have exclusive jurisdiction over "determination[s] respecting" a SAW application.[8] We have previously considered and rejected this argument. In Haitian Refugee Center v. Smith, 676 F.2d 1023 (5th Cir. Unit B 1982), we concluded that because plaintiffs' complaint, which challenged the INS's accelerated procedures for processing asylum requests, addressed "matters alleged to be part of a pattern or practice by immigration officials to violate the constitutional rights of a class of aliens," plaintiffs' claims were "independently cognizable in the district court under its federal question jurisdiction." Id. at 1033. In Jean v. Nelson, 727 F.2d 957 (11th Cir.1984) (in banc), aff'd, 472 U.S. 846, 105 S.Ct. 2992, 86 L.Ed.2d 664 (1985), we reaffirmed that section 106 of the INA (Codified at 8 U.S.C. Sec. 1105a) does not deprive district courts of jurisdiction to review allegations of systematic abuses by INS officials. Jean, 727 F.2d at 980. We explained that to postpone "judicial resolution of a disputed issue that affects an entire class of aliens until an individual petitioner has an opportunity to litigate it on habeas corpus would foster the very delay and procedural redundancy that Congress sought to eliminate in passing Sec. 1105a." Id. In this action, appellees do not challenge the merits of any individual status determination; rather, like the plaintiffs in Haitian Refugee Center v. Smith and Jean v. Nelson, they contend that defendants' policies and practices in processing SAW applications deprive them of their statutory and constitutional rights.[9]
 
 
 16
 Appellants also contend that review of plaintiffs' claims was precluded by their failure to exhaust administrative remedies. This argument is clearly inapposite as applied to the organizational plaintiffs, who had no remedy to exhaust.[10] See Ayuda, Inc. v. Meese, 687 F.Supp. 650, 660 (D.D.C.1988). As to the individual plaintiffs,[11] appellants argue that exhaustion is required by section 1105a(c), which provides that "[a]n order of deportation or of exclusion shall not be reviewed by any court if the alien has not exhausted the administrative remedies available to him as of right...." 8 U.S.C. Sec. 1105a(c). We rejected this argument as well in Haitian Refugee Center v. Smith, which involved a constitutional challenge to procedures adopted by the INS for the processing of asylum claims. Like plaintiffs in that case, the individual plaintiffs here do not seek substantive review of any individual ruling respecting their status. Rather, they challenge the adequacy of the procedures employed in the processing of their SAW applications.[12] Accordingly, the exhaustion requirement imposed by section 1105a has no bearing on the district court's jurisdiction in this action.
 
 
 17
 Having concluded that the statutory exhaustion requirement is inapplicable, we now turn to the judicially-created exhaustion doctrine. We note at the outset that the application of the judicial exhaustion doctrine is subject to the discretion of the trial court. Panola Land Buyers Ass'n v. Shuman, 762 F.2d 1550, 1556-57 (11th Cir.1985). The general rule is that a challenge to agency action in the courts must occur after available administrative remedies have been pursued. Id. at 1556. Exhaustion is not required, however, where the administrative remedy will not provide relief commensurate with the claim. Id. The nature of plaintiffs' constitutional challenge of INS procedures is such that relief at the administrative review level would have been unlikely. The chances are remote that the INS would have considered substantial revision of the procedures devised for the processing of SAW applications at the behest of a single alien mounting a constitutional attack in the context of administrative review of her application. See Mathews v. Eldridge, 424 U.S. 319, 330, 96 S.Ct. 893, 900, 47 L.Ed.2d 18 (1976); Haitian Refugee Center v. Smith, 676 F.2d at 1034. We therefore conclude that the exhaustion doctrine did not bar the district court's assertion of jurisdiction, and that the court acted well within its discretion in entertaining plaintiffs' claims for relief.
 
 IV. Preliminary Injunction
 
 18
 The grant or denial of a motion for preliminary injunction is a decision within the discretion of the trial court. United States v. Lambert, 695 F.2d 536, 539 (11th Cir.1983). Appellate review of the district court's decision is very narrow. Accordingly, a district court's decision will be reversed only where there is a clear abuse of discretion. Revette v. International Ass'n of Bridge, Structural and Ornamental Iron Workers, 740 F.2d 892, 893 (11th Cir.1984). That discretion is guided by four requirements for preliminary injunctive relief: (1) a substantial likelihood that the movants will ultimately prevail on the merits; (2) that they will suffer irreparable injury if the injunction is not issued; (3) that the threatened injury to the movants outweighs the potential harm to the opposing party; and (4) that the injunction, if issued, would not be adverse to the public interest. United States v. Alabama, 791 F.2d 1450, 1459 n. 10 (11th Cir.1986), cert. denied, 479 U.S. 1085, 107 S.Ct. 1287, 94 L.Ed.2d 144 (1987).
 
 
 19
 In enacting the Special Agricultural Worker program, Congress and the executive branch have granted aliens a constitutionally protected right to apply for temporary residency as well as a right to substantiate their claims for eligibility. See, e.g., Haitian Refugee Center v. Smith, 676 F.2d at 1038 (Congress intended through establishment of asylum procedure to grant aliens right to submit claims for asylum and opportunity to substantiate such claims). Congress may, through the enactment of legislation, create a substantive entitlement to a particular governmental benefit. See, e.g., Goldberg v. Kelly, 397 U.S. 254, 262, 90 S.Ct. 1011, 1017, 25 L.Ed.2d 287 (1970) (federally created property interest exists in continued receipt of welfare benefits). Once Congress chooses to create such a system of entitlements and promulgates rules which restrict the discretion of administrative officers to grant benefits under the system, a property interest is created that is accorded procedural due process protection. See Board of Regents v. Roth, 408 U.S. 564, 576-77, 92 S.Ct. 2701, 2708-09, 33 L.Ed.2d 548 (1972).
 
 
 20
 Having concluded that an entitlement interest exists in the right to apply for SAW status, it remains for us to determine what safeguards due process requires. In evaluating the constitutional sufficiency of the procedures provided, we must consider (1) the interest at stake for the individual, (2) the risk of an erroneous deprivation of the interest through the procedures used and the probable value of additional procedural safeguards, and (3) the government's interest in avoiding the potential burdens that the additional or substitute procedures would entail. Mathews, 424 U.S. at 335, 96 S.Ct. at 903; see also Landon v. Plasencia, 459 U.S. 21, 34, 103 S.Ct. 321, 330, 74 L.Ed.2d 21 (1982) (Mathews test appropriate for evaluation of procedures in immigration context).
 
 
 21
 Plaintiffs' interest in establishing their entitlement to adjustment under the SAW program is plain. Evidence as to the second Mathews factor is equally persuasive. Without an adequate interpreter at the interview, the risk of an erroneous recommendation is unacceptably high. The ability of the adjudicator at the interview to make a reasonable assessment of the applicant's credibility is obviously hampered by his inability to understand the applicant's statements. Furthermore, the preclusion of witness testimony clearly increases the risk of erroneous determinations in light of the practice of cursorily denying applications accompanied only by affidavits, especially in cases involving inadequate documentation of employment history.
 
 
 22
 [10, 11] Paragraphs (6)[13] and (7) of the district court's order require no more than is required by IRCA, its accompanying regulations and INS procedures. Appellants concede that the SAW program requires that an interpreter be used in every case where the applicant does not understand the adjudicator. The INS Examinations Handbook directs the examining officer to "make certain whether the services of an interpreter are required" if the person being questioned does not speak English. The regulations clearly allow the presentation of witness testimony, see 8 C.F.R. Sec. 210.3(b)(3), (c). Appellants acknowledge that the general rule is that SAW applicants may bring witnesses to testify on their behalf. Because appellants' procedures already contemplate what these provisions of the injunction require, it is unnecessary for us to consider the third Mathews factor.
 
 
 23
 Paragraph (8) of the injunction directs LO interviewers to "particularize the evidence offered, testimony taken, credibility determinations and any of the relevant information on the form I-696." Appellants argue that this requirement constitutes an additional procedure which would entail significant administrative and financial burdens. Without any record of what transpired at the interview, however, the review provided for in IRCA is meaningless. "Meaningful review requires that the reviewing court should review." Kent v. United States, 383 U.S. 541, 561, 86 S.Ct. 1045, 1057, 16 L.Ed.2d 84 (1966) (emphasis added). Due process thus requires that the interviewer set forth the factual basis for his recommendation with sufficient specificity to permit the RPF (and eventually the Administrative Appeals Unit and court of appeals) to make a decision regarding the recommendation. See, e.g., Jang Man Cho v. Immigration & Naturalization Service, 669 F.2d 936, 940 n. 6 (4th Cir.1982) (reasons for finding witness unbelievable should be fully stated as a prerequisite for appellate review).
 
 
 24
 For the reasons set forth above, we conclude that the district court did not abuse its discretion in granting plaintiffs' motion for preliminary injunction. Accordingly, the judgment of the district court is
 
 
 25
 AFFIRMED.
 
 
 
 *
 Honorable Frank A. Kaufman, Senior U.S. District Judge for the District of Maryland, sitting by designation
 
 
 [1]
 Appellants, who were defendants below, do not challenge the propriety of the class certification
 
 
 [2]
 When the LO, the RPF or the AAU denies a SAW application the adjudicator must give the applicant written notice setting forth the reasons for denial. 8 C.F.R. Sec. 103.3(a)(2). In the case of denial by the LO or the RPF the notice must inform the applicant of the availability of review and procedures for appeal. Id
 
 
 [3]
 The regulations provide that a
 complete application will be determined to be nonfrivolous at the time the applicant appears for an interview at the legalization or overseas processing office if it contains: (1) Evidence or information which shows on its face that the applicant is admissible to the United States or, if inadmissible, that the applicable grounds of excludability may be waived under the provisions of section 210(c)(2)(i) of the Act, and (2) evidence or information which shows on its face that the applicant performed at least 90 man-days of employment in seasonal agricultural services during the twelve-month period from May 1, 1985 through May 1, 1986, and (3) documentation which establishes a reasonable inference of the performance of the seasonal agricultural services claimed by the applicant.
 
 
 [8]
 C.F.R. Sec. 210.1(j)
 
 
 [4]
 The regulations provide that
 The term 'man-day' means the performance during any day of not less than one hour of qualifying agricultural employment for wages paid. If employment records relating to an alien applicant show only piece rate units completed, then any day in which piece rate work was performed shall be counted as a man-day. Work for more than one employer in a single day shall be counted as no more than one man-day for the purposes of this part.
 
 
 [8]
 C.F.R. Sec. 210.1(i)
 
 
 [5]
 As the district court noted, legislation such as the Migrant and Seasonal Agricultural Worker Protection Act, 29 U.S.C. Secs. 1801-1872, requires employers and farm labor contractors to maintain payroll and employment records. Violations of these requirements, however, are common. See Haitian Refugee Center, Inc. v. Nelson, 694 F.Supp. at 869 n. 10
 
 
 [6]
 As the district court noted, the fear of sanctions for noncompliance with federal laws underlies employers' and labor contractors' reluctance to keep accurate records. Labor contractors sometimes fear they will be subject to liability for violation of statutes designed to protect farm workers. In some instances, contractors and employers fear they will be liable for back social security and unemployment insurance taxes. See id. at 869-70
 
 
 [7]
 Prior to the application period, a form affidavit was developed for use by applicants to meet the burden of proof. The I-705 "Affidavit Confirming Seasonal Agricultural Employment of an Applicant for Temporary Residence Status Under Section 210 of the Immigration and Nationality Act" states that the affiant is "willing to personally confirm this information if requested" and is to be signed under penalty of perjury. See Haitian Refugee Center, Inc. v. Nelson, 694 F.Supp. at 871; 52 Fed.Reg. 16195 (1987)
 
 
 [8]
 Section 210(e)(1) provides that "[t]here shall be no administrative or judicial review of a determination respecting an application for adjustment of status under this section except in accordance with this subsection." 8 U.S.C. Sec. 1160(e)(1). Section 210(e)(3) states that "[t]here shall be judicial review of such a denial only in the judicial review of an order of exclusion or deportation" under section 106 of the INA. 8 U.S.C. Sec. 1160(e)(3). Section 106(a) vests jurisdiction in the courts of appeals and provides that:
 The procedure prescribed by, and all the provisions of Chapter 158 of Title 28 [28 U.S.C. Secs. 2341-2353], shall apply to, and shall be the sole and exclusive procedure for, the judicial review of all final orders of deportation heretofore or hereafter made against aliens within the United States pursuant to administrative proceedings under section 1252(b) of this title or comparable provisions of any prior Act, except that--
 ....
 An order of deportation or of exclusion shall not be reviewed by any court if the alien has not exhausted the administrative remedies available to him as of right under the immigration laws and regulations or if he has departed from the United States after the issuance of the order.
 8 U.S.C. Sec. 1105a(a), (c) (emphasis added).
 
 
 [9]
 Federal courts also have jurisdiction to review allegations that agency officials have acted outside their statutory authority. See Lloyd Sabaudo Societa Anonima Per Azioni v. Elting, 287 U.S. 329, 335, 53 S.Ct. 167, 170, 77 L.Ed. 341 (1932); Jean v. Nelson, 727 F.2d at 966, 967 n. 11. See also Abdelhamid v. Ilchert, 774 F.2d 1447, 1450 (9th Cir.1985) (court of appeals has jurisdiction to review allegations that agency has abused its discretion by failing to comply with own regulations)
 
 
 [10]
 Appellants also suggest that the organizational plaintiffs do not have standing "to assert the legal rights and interests of third parties." The district court's conclusion that HRC and MRS had standing, however, was not based on a theory of third-party standing. Instead, the court concluded that HRC and MRS had standing to challenge INS practices in their own right under the theory of Havens Realty Corp. v. Coleman, 455 U.S. 363, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982), which held that an organization which promotes racially integrated housing had sustained sufficient injury to establish standing to challenge the discriminatory practices of a real estate agency. Id. at 379, 102 S.Ct. at 1124. See also Action Alliance of Senior Citizens v. Heckler, 789 F.2d 931, 937-38 (D.C.Cir.1986) (counseling organization alleging inhibitions of its daily operations had standing to challenge Health and Human Services secretary's implementation of the Age Discrimination Act)
 
 
 [11]
 The members of the plaintiff class are at varying stages of the application process
 
 
 [12]
 Appellants' reliance on Garcia-Mir v. Smith, 766 F.2d 1478 (11th Cir.1985), cert. denied, 475 U.S. 1022, 106 S.Ct. 1213, 89 L.Ed.2d 325 (1986), is misplaced. In that case, which also involved a class-wide challenge to INS procedures, we held that the statutory exhaustion requirement barred plaintiffs' additional claims for substantive review of their deportation and exclusion orders. In this case, no substantive relief is requested
 
 
 [13]
 Paragraph (6) requires LOs to "maintain competent translators, at a minimum, in Spanish and Haitian Creole, and translators in other languages ... if necessary." This provision is properly tailored to meet the requirements of due process. "If necessary," however, does not mean that interpreters in other languages shall automatically be required, absent court order, in the case of an non-English speaking applicant who speaks neither Spanish nor Haitian Creole