**Roberto TEFEL, et al., on behalf of themselves and all others similarly situated, Plaintiffs/Petitioners,**

v.

**Janet RENO, Attorney General of the United States; Robert Wallis, District Director; Immigration and Naturalization Service and Department of Justice, Board of Immigration Appeals, Defendants/Respondents.**

No. 97–0805–CIV.

United States District Court, S.D. Florida.

May 20, 1997.

Order Denying Stay May 22, 1997.

Ira J. Kurzban, Kurzban, Kurzban, Weinger & Tetzeli, P.A., Miami, FL, Elliot H. Scherker, Oscar Levin, Greenberg, Traurig, Hoffman, Rosen & Quentel, P.A., Esther Olavarria Cruz, Vincente Tome, Rebecca Sharpless, Florida Immigration Advocacy Center, Miami, FL, Mario Martin Lovo, Mario M. Lovo, P.A., Miami, FL, Mary E. Kramer, Law Offices of Mary E. Kramer, Miami, FL, Linda Kelly, St. Thomas Law School, Miami, FL, Mario Louis, Miami, FL, Ernesto Varas, Law Office of Ernesto Varas, Miami, FL, Kari Woodward Carranza, Jeannette Mirabal, Law Offices of Magda Montiel Davis, Miami, FL, Robert L. Boyer, Law Offices of Robert L. Boyer, Miami, FL, for Plaintiffs.

Dexter A. Lee, Asst. U.S. Atty., Miami, FL, David Bernal, Senior Litigation Counsel, Office of Immigration Litigation, Dept. of Justice, Washington, DC, F. Franklin Amanat, Nelda C. Reyna, Trial Attorney, Office

of Immigration Litigation, Dept. of Justice, Washington, DC, Ernesto Molina, Trial Attorney, Office of Immigration Litigation, Dept. of Justice, Washington, DC, Laura M. Friedman, Trial Attorney, Office of Immigration Litigation, Dept. of Justice, Washington, DC, for Defendants.

### ORDER DENYING MOTION TO DISMISS, CERTIFYING CLASS AND APPOINTING LEAD COUNSEL, GRANTING TEMPORARY RESTRAINING ORDER, AND SETTING PRELIMINARY INJUNCTION HEARING FOR MAY 27, 1997

JAMES LAWRENCE KING, District Judge

THIS CAUSE is before the Court on the Plaintiffs' Motion for Temporary Restraining Order, Plaintiffs' Motion for Provisional Class Certification, and Defendants' Motion to Dismiss for Lack of Jurisdiction. The Court heard the Plaintiffs' evidence in support of the Motion for Temporary Restraining Order on May 13, 1997, and the Defendants, after having been given an overnight recess to determine whether they wished to present evidence in opposition to the motion, announced that they would not present any testimony or evidence. The Court thereupon heard the argument of counsel for the parties on the pending motions on May 14, 1997. Counsel were given full opportunity to present all arguments in support of their positions, and the Court has also had for its consideration the extensive and thorough memoranda submitted by the parties.

### THE DEFENDANTS' MOTION TO DISMISS

The Defendants have moved to dismiss the complaint on several grounds: (1) that the Court does not have jurisdiction in this cause under § 242(g) of the Immigration and Nationality Act ("INA"), as enacted by Section 306 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"); (2) that only the United States Court of Appeals for the Eleventh Circuit has jurisdiction to review final orders of deportation; and (3) that the Plaintiffs have not exhausted their administrative remedies. After reviewing the parties' memoranda and hearing oral argument of counsel, the Court finds that the Defendants' motion is without merit and should be denied.

The well established standard for evaluating a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is whether the complaint, taken literally with all averments therein treated as true and correct, states a claim for relief. The controlling rule in the Eleventh Circuit is that a complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would support relief. E.g., Pataula Electric Membership Corp. v. Whitworth, 951 F.2d 1238, 1240 (11th Cir.), cert. denied, 506 U.S. 907, 113 S.Ct. 302, 121 L.Ed.2d 225 (1992). Applying this standard, and having carefully reviewed the parties' memoranda and their legal arguments at the hearing in this matter, the Court determines that it has jurisdiction in this cause.

█ First, there is a strong presumption that the actions of federal agencies are reviewable in the federal courts unless nonreviewability is explicitly demonstrated in the statutory language. E.g., Felker v. Turpin, — U.S. ——, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996); McNary v. Haitian Refugee Ctr., Inc., 498 U.S. 479, 111 S.Ct. 888, 112 L.Ed.2d 1005 (1991); Bowen v. Michigan Academy of Family Physicians, 476 U.S. 667, 670, 106 S.Ct. 2133, 2135–36, 90 L.Ed.2d 623 (1986); Rosas v. Brock, 826 F.2d 1004 (11th Cir. 1987); Abbott Laboratories v. Gardner, 387 U.S. 136, 140–41, 87 S.Ct. 1507, 1510–11, 18 L.Ed.2d 681 (1967) ["Judicial review is the rule ... and nonreviewability is a narrow exception which must be clearly demonstrated."]

█ This presumption is even stronger where denial of review would preclude even colorable constitutional claims. Webster v. Doe, 486 U.S. 592, 603, 108 S.Ct. 2047, 2053, 100 L.Ed.2d 632 (1988). Even where statutes have facially barred judicial review of agency action, the Supreme Court has interpreted them to permit review of constitutional claims. See, e.g., McNary v. Haitian Refugee Center, Inc., 498 U.S. 479, 491–95,

111 S.Ct. 888, 896–97, 112 L.Ed.2d 1005 (1991); *Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975). Most recently, the Fifth Circuit Court of Appeals in *Anwar v. I.N.S.*, 107 F.3d 339 (5th Cir. 1997) reached the same conclusion notwithstanding language in the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") precluding all review for criminal aliens.

■ The Defendants rely upon the language of § 242(g), which statute declares that, "[e]xcept as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any client arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders." The Court has determined that the statute does not bar the exercise of the Court's federal question jurisdiction for several reasons.

First, the statute on its face does not bar this action. The plain statutory language only precludes judicial review of "the decision or action of the Attorney General." The statute does not bar the review of the decisions or actions of lower level government officials. The Immigration and Nationality Act ("INA") specifically defines the Attorney General as "the Attorney General of the United States" and no one else. INA § 101(a)(5), 8 U.S.C. § 1101(a)(5) ["The term 'Attorney General' means the Attorney General of the United States"].

■ This Court's reading of INA § 242(g) is consistent with its plain language and the principles governing statutory construction of preclusion statutes. Where statutory language is clear on its face, as here, the inquiry ends and no review of the legislative history or administrative practice is necessary or appropriate. *Ratzlaf v. U.S.*, 510 U.S. 135, 146 and n. 18, 114 S.Ct. 655, 662 and n. 18, 126 L.Ed.2d 615 (1994); *Demarest v. Manspeaker*, 498 U.S. 184, 190, 111 S.Ct. 599, 603, 112 L.Ed.2d 608 (1991); *U.S. v. Kirkland*, 12 F.3d 199 (11th Cir.1994).

■ Nor does this Court's reading of INA § 242(g) lead to an unreasonable result, although if it did, the plain language would still control. *Commissioner of Internal Revenue v. Asphalt Products Co.*, 482 U.S. 117, 121, 107 S.Ct. 2275, 2278, 96 L.Ed.2d 97 (1987); *Peabody Coal Co. v. Navajo Nation*, 75 F.3d 457, 468 (9th Cir.1996). Restricting review of the specific decisions of the Attorney General only and not lower level governmental officials is consistent with the principle that persons at the highest levels of government may be accorded deference while lower level officials may not. *Hampton v. Mow Sun Wong*, 426 U.S. 88, 96 S.Ct. 1895, 48 L.Ed.2d 495 (1976). Under the Defendants' reading of the statute any immigration decision of any person who works, in any way, for the Department of Justice would be insulated from review. A reading of the statute that broad should not be presumed where the statute on its face expresses an unambiguous contrary intent.[1]

---

1. The Defendants claim that when lower level officials make immigration decisions those are the decisions of the Attorney General because the INA provides for delegation of authority by the Attorney General. The Defendants claim that since the plaintiffs are challenging the Board of Immigration Appeals ("BIA") decision in *Matter of N–J–B–*, Int. Dec. 3309 (BIA 1997) the BIA's decision is the decision of the Attorney General and review is therefore barred.

But the decision of the BIA is not factually, nor legally, the decision of the Attorney General. The Supreme Court recognized in *U.S. ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954) that there was a clear separation between the Attorney General and the BIA and that the Attorney General could not, without violating due process, interfere in the deliberative processes of the BIA. Moreover, the

Defendants presented no evidence that the Attorney General ordered or directed the specific actions challenged. If the Attorney General wanted to "adjudicate" *Matter of N–J–B–*, she could have exercised her regulatory authority to do so under 8 C.F.R. § 3.1(h) as she recently did in another matter, see, *Matter of Soriano*, Int. Dec. 3289 (AG 1997).

Although the Attorney General may delegate her authority under the INA to lower level government officials in limited circumstances, see INA § 103(a)(4), (a)(6) and (c), she cannot determine the extent of federal jurisdiction by delegating her authority. *Haitian Refugee Center, Inc. v. Nelson*, 872 F.2d 1555, 1560 n. 9 (11th Cir.1989), *aff'd*, 498 U.S. 479, 111 S.Ct. 888, 112 L.Ed.2d 1005 (1991); *Jean v. Nelson*, 727 F.2d 957, 966 n. 11 (11th Cir.1984) *aff'd as to remand only*, 472 U.S. 846, 105 S.Ct. 2992, 86 L.Ed.2d 664 (1985);

Defendants' interpretation of the statutes would also lead to a complete abolition of all judicial review for deportation cases commencing before April 1, 1997, a result that the Court cannot find to be explicitly commanded by the statutory language. Section 242(g)of the INA expressly prohibits judicial review of deportation orders "[e]xcept as provided in this section and notwithstanding any other provision of law." The remainder of INA § 242, which contains the only judicial review procedures excepted from this bar, does not apply to deportation proceedings that were initiated prior to April 1, 1997. Section 309(c) of IIRIRA provides that the new judicial review amendments under § 306 of IIRIRA (which create INA § 242) do not apply to deportation cases instituted prior to the April 1, 1997 effective date. IIRIRA § 309(c)(1)(A). Such proceedings, including judicial review, shall continue to be conducted without regard to § 242. IIRIRA § 309(c)(1)(B).

■ Because Plaintiffs are in deportation proceedings that were initiated prior to April 1, 1997, their cases would be governed by the pre § 242 statutory scheme. If, however, the Court were to adopt Defendants' construction of § 242(g), all judicial review of pre-April 1, 1997 deportation cases would be entirely barred, a result that would raise serious constitutional issues.[2] The Court, however, chooses to adopt a common-sense interpretation of the statutes, under which claims arising from pre-April 1, 1997 deportations will be governed by the statutes as they existed prior to § 242, while cases in which the Attorney General elects to proceed under the new statutory scheme by virtue of § 309(c)(3) will be governed by § 242(g). This interpretation is consistent with the Court's responsibility to avoid an unconstitutional result, see, e.g. Webster v. Doe, 486 U.S. 592, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988); Califano v. Sanders, 430 U.S. 99, 109, 97 S.Ct. 980, 986, 51 L.Ed.2d 192 (1977), that would occur here if INA § 242(g) was applied to pending deportation proceedings.

The Defendants argue that the only exception to the purported total bar to judicial review under § 242(g) is that set forth in former § 106(a) of the INA, under which provision "the sole and exclusive procedure" to review "final orders of deportation" is in the court of appeals. The Defendants' effort to add the § 106(a) exception to the language of INA § 242 is not based on the language of the statute itself. INA § 242(g) simply does not provide an exception for proceedings under INA § 106 because § 106 is repealed in the same section—IIRIRA 306(b)—that creates INA § 242(g).

Although INA § 106 does not apply, as Defendants suggest, as an exception to INA § 242(g), it nevertheless applies as the pre-existing law for deportation review. The Defendants, however, read INA § 106 to deny all district court review, while requiring that all issues be resolved in the circuit court of appeals. This action, however, presents class-wide challenges to policies of the Defendants and does not challenge the resolution of the merits of any individual's claim for

*Abdelhamid v. Ilchert*, 774 F.2d 1447, 1450 (9th Cir.1985). To allow the Executive Branch of our government to determine the extent of federal jurisdiction would be contrary to the fundamental principle that "it is emphatically the province and duty of the judicial department to say what the law is." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803).

2. The Defendants believe that INA § 242(g) applies to deportation proceedings because of § 306(c)(1) of IIRIRA which states that INA § 242(g) "shall apply without limitation to claims arising from all past, pending, or future exclusion, deportation or removal proceedings under such Act." This provision, as the title states, goes not to the application of INA § 242(g) but to its "Effective Date." Section 306(c)(1) simply provides the timing, i.e., the "effective date" as to when § 242(g) will apply. However, once the language of § 242(g) itself is applied, the language limits it to removal proceedings. The only sensible way to harmonize § 306(c)(1) of IIRIRA and INA § 242(g) is to find that INA § 242(g) applies to proceedings that began as exclusion or deportation proceedings but were changed into removal proceedings under § 306(c)(3) of IIRIRA. This provision allows the Attorney General, as part of a transition process, to change deportation proceedings into removal proceedings after April 1, 1997. If that were to be done, then § 242(g)'s language applying it "without limitation to claims arising from all past (or) pending ... deportation .. proceedings" would be given effect to bar the claims specified in the statute. The Attorney General has not exercised her authority to do that in this or, to the Court's knowledge, any other case.

relief from deportation. Here, the Plaintiffs seek to challenge Defendants procedural decision to bar all suspension of deportation claims as a result of *Matter of N–J–B–*. The Plaintiffs also challenge the Defendants' alleged unconstitutional conduct. Plaintiffs' success on these issues would not result in the grant of suspension of deportation in any case. It would simply remove the procedural bars to the right to be heard on the suspension claim. The Court finds that such claims are beyond the scope of former § 106(a). *McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479, 111 S.Ct. 888, 112 L.Ed.2d 1005 (1991); *Haitian Refugee Center v. Smith*, 676 F.2d 1023, 1033–36 (5th Cir.1982); *Montes v. Thornburgh*, 919 F.2d 531, 535–36 (9th Cir.1990).

■ Moreover, the Plaintiffs' estoppel and due process claims, as set forth in their complaint and the evidence presented at the temporary restraining order hearing, are matters that cannot be addressed by an Immigration Judge ("IJ") or the Board of Immigration Appeals ("BIA"). Such claims are external to the deportation process itself and are beyond the jurisdiction of an IJ or the BIA to consider. *Matter of Hernandez–Puente*, 20 Int. Dec. 335, 338 (BIA 1991). Plaintiffs provided testimony that they have been lulled into a change of position, and an abandonment of substantial liberty and property rights, by the importuning of the INS to abandon their claims for political asylum and apply for suspension hearings, paying hundreds of dollars in fees. Their claim, which the Court finds to be very persuasive, is not one which IJs have any jurisdiction to consider. A record could therefore never be created before the IJ or the BIA that a Court of Appeals could review. As the Court of Appeals is bound by the record that the BIA presents, INA § 106(a)(4), 8 U.S.C. § 1105a(a)(4), it would have nothing to review in light of *Matter of Hernandez–Puente*. Further, the Court heard convincing testimony from lawyers practicing before the Immigration Court that they sought to raise estoppel claims before the IJs and were uniformly denied the right to do so. The Plaintiffs would be unable to develop a factual record before the IJ or BIA to support their estoppel claims.

Absent the existence of federal question jurisdiction in this Court to consider Plaintiffs' estoppel and due process claims, judicial review is entirely foreclosed. The Eleventh Circuit, on review of orders of the IJ and BIA, neither of which would have jurisdiction to review the estoppel claims in the first instance, would not be a forum in which the Plaintiffs could press such claims.

■ Because an IJ could not develop a record on which the estoppel or due process claims fairly could be tried, there can be no review except by means of a record created in this Court, from which the Court of Appeals ultimately can pass on the merits of the claim. It is only after the development of an appropriate factual record in the United States District Court on constitutional issues that are beyond the power of the immigration authorities to adjudicate in the administrative context that the Court of Appeals may properly consider these issues. The Court therefore finds that former § 106(a) cannot be construed to prohibit this Court from exercising its federal question jurisdiction to determine the estoppel claim in the first instance.

■ Nor can § 242(g) or former § 106(a) be construed to bar this Court's consideration of Plaintiffs' claims for deprivation of equal protection rights under the Fifth Amendment to the Constitution of the United States. That claim, like the estoppel and due process claim, cannot be addressed before the IJ or BIA. A factual record for the Eleventh Circuit to review can only be developed in the district court. To the degree that the Defendants urge the view that jurisdiction only resides in the Court of Appeals to consider the constitutional issues, Plaintiffs would be precluded from creating a record on the due process and equal protection issues. As the Plaintiffs' due process and equal protection claims rest on the development of a factual record in the district court, requiring them to raise such claims only before the Court of Appeals is tantamount to denying Plaintiffs' a forum before which they can raise their constitutional claims.

Although the Congress may define the jurisdiction of the federal courts, it may not intrude upon the judiciary's essential function by denying any judicial forum to a plaintiff who asserts a violation of constitutional rights. There are constitutionally-protected liberty interests at stake when an alien is threatened with deportation and liberty and property interests where the right to seek suspension is removed. Persons who are so threatened must have the opportunity under the framework of our laws to raise their constitutional claims. Again, a contrary interpretation would seriously call into question the constitutionality of § 242(g) or § 106(a). *See, e.g. Webster v. Doe.* The Court chooses to interpret the statutes as not barring a plaintiff from asserting a federal constitutional violation in the United States District Court.

The Defendants' argument that all plaintiffs and class members should pursue their constitutional and nonconstitutional claims exclusively in the Court of Appeals upon receiving a final order of deportation from the immigration court also ignores the testimony introduced at trial that in many circumstances class members are being deported without any remedy to the circuit court. Nicaraguan members of the class who filed motions to reopen their proceedings for suspension of deportation at the invitation of the Defendants have had those motions pending before the BIA or IJs for months or years. During the pendency of the motions the Defendants agreed not to deport the Nicaraguan class members and in fact assured them there would be no problem. Thereafter, the BIA decided *Matter of N–J–B–.* As a binding precedent it is clear that Plaintiffs motions will not be granted. However, their cases have not yet been dismissed so they can not go to the circuit court to seek review. The class members are subject to immediate deportation because there is no stay in effect. Nor could they obtain a stay administratively because under *Matter of N–J–B–* they have no right to seek suspension. They may now be removed from the United States prior to the BIA acting on their motion to reopen. If their motion to reopen is not ruled upon by the IJ or BIA, there is no basis to seek circuit court review. Moreover, once deport-

ed, class members would lose all opportunity to have their claims heard.

The Court also rejects the Defendants' argument that Plaintiffs should be barred from pursing their action for failure to exhaust administrative remedies. As the Eleventh Circuit held in *Garcia–Mir v. Smith,* 766 F.2d 1478, 1488 (11th Cir.1985), a party need only present his claim to the agency. Here, each and every class member has presented his claim to the BIA or IJ. All claims are being denied for one reason — *Matter of N–J–B–.*

Moreover, the courts have always recognized exceptions to the exhaustion doctrine. A plaintiff will not be required to exhaust remedies when it is utterly futile to do so. *E.g., Honig v. Doe,* 484 U.S. 305, 326–27, 108 S.Ct. 592, 605–06, 98 L.Ed.2d 686 (1988). Exhaustion would be futile here because the BIA has definitively spoken in *Matter of N–J–B–.* No judicial interest would be served by requiring the Plaintiffs or other class members to wait until an administrative decision is rendered as that decision is compelled by *Matter of N–J–B–.*

There is also no exhaustion requirement where a party is asserting constitutional claims that the agency cannot adjudicate. *Haitian Refugee Center, Inc. v. Nelson,* 872 F.2d 1555, 1560 (11th Cir.1989). Exhaustion of administrative remedies is also not required where, as here, the party is challenging a policy rather than the outcome of any particular case. *Haitian Refugee Center, supra; Jean v. Nelson,* 727 F.2d 957 (11th Cir.1984) (*en banc*), *aff'd as to judgment to remand only,* 472 U.S. 846, 105 S.Ct. 2992, 86 L.Ed.2d 664 (1985); *Haitian Refugee Center v. Smith,* 676 F.2d 1023 (5th Cir. Unit B 1982). Exhaustion of administrative remedies is also not required where, as here, claims requiring exhaustion and those not requiring exhaustion are "so intimately entwined ... as to make the application of the exhaustion requirement improvident even if technically permissible." *Haitian Refugee Center, Inc. v. Civiletti,* 503 F.Supp. 442, 468 (S.D.Fla.1980) *affirmed, Haitian Refugee Center, Inc. v.*

*Smith,* 676 F.2d 1023, 1033–36 (5th Cir. Unit B 1982).

Moreover, there was substantial evidence introduced at the temporary restraining order hearing indicating that many persons will be deprived of their appellate rights to the circuit court simply because they do not have the finances to appeal their cases. Without the existence of this case, these Plaintiffs will be denied any forum to raise their constitutional and statutory claims.

The Defendants' argument would require the Court to rule that there is simply no remedy available for the 30–40,000 Nicaraguan refugees and others who have sought suspension of deportation. The Court declines to do so, under well established constitutional principles and rules of statutory construction. Many of the Plaintiffs and class members who have been in this country for as long as 12 or 14 years are now at risk of deportation under the INS' newly-announced interpretation in *Matter of N–J–B–.* The Defendants' Motion to Dismiss for Lack of Jurisdiction is therefore DENIED. The Court has jurisdiction in this cause.

### *PROVISIONAL CLASS CERTIFICATION*

██  Plaintiffs have moved for provisional class certification. The class allegations in the complaint are that the named Plaintiffs either have been or will be denied suspension of deportation, for which they otherwise would have been entitled to apply had the BIA lawfully applied the governing statutes. The complaint further alleges that denial of suspension to the named Plaintiffs is identical to that which the members of the respective class have been subjected, with which they have been threatened, or to which they will be subjected. Having reviewed the pleading and memoranda, and having heard the argument of counsel, the Court finds that Plaintiffs have satisfied the requirements for class certification under Rule 23 of the Federal Rules of Civil Procedure.

██  First, the Plaintiffs, as set forth in the complaint, are adequate representatives of their class. The common goal of each member of the class is to enjoin the application of the BIA's decision in *Matter of N–J–B–,* to have orders entered establishing that their constitutional and statutory rights have been violated, and ultimately to establish that the BIA's interpretation of the governing statutes is incorrect. If the Plaintiffs succeed, the benefits will inure to all class members. Where the named plaintiffs in a class action are seeking the same type of relief for themselves as they seek for class members, the adequacy of representation requirement of Rule 23(a)(4) of the Federal Rules of civil Procedure is satisfied.[3]

The Court further finds that it is in a unique position to acknowledge the abilities of class counsel, Ira J. Kurzban, having presided over another matter, some 18 years ago, in which Mr. Kurzban, as lead counsel for the class, brought a class action on behalf of Haitian refugees. The Court is satisfied that the class will not only be adequately

---

3. The Defendants claim that Plaintiffs are not adequate representatives for the class because there is a statutory cap of 4,000 on the number of persons who can receive suspension of deportation. This, the Defendants claim, places the named Plaintiffs' at odds with the class because they will be fighting with class members over the scarce number of suspension slots that may be left. However, there is no 4000 limitation to cause antagonism. The 4000 cap addressed in § 309(c)(7) is a cap on adjustment of status not on granting suspension of deportation. The statute provides that the "Attorney General may not suspend the deportation and adjust the status under section 244 of the Immigration and Nationality Act of more than 4,000 aliens in any fiscal year ..." (emphasis added). The word "and" must "be accepted for its conjunctive connotation rather than as a word interchangeable with 'or'" unless such a "strict grammatical construction [would] frustrate clear legislative intent." *Bruce v. First Federal Savings and Loan Ass'n of Conroe, Inc.,* 837 F.2d 712, 715 (5th Cir.1988). The Court concludes that IIRIRA 309(c)(7) prohibits the Attorney General from performing both—rather than either—of suspension and adjustment for more than 4,000 people in a fiscal year. The Attorney General is free, therefore, to grant as many suspension applications as she finds eligible provided that no more than 4,000 aliens are adjusted to permanent residency in any fiscal year. This reading of the cap is consistent with the former law that differentiated between obtaining suspension and obtaining residency. *Compare* former INA § 244(c) and (d). Moreover, even if there were a limited number of suspension slots open to class members each fiscal year, that would have no effect on the issue of whether the named plaintiffs can adequately represent the class.

**618**

represented, but will be well represented, by Mr. Kurzban.

The Court is also satisfied that there is a predominantly common interest and that the requirements of "commonality" and "typicality" are satisfied. The complaint raises class-wide issues that are not directed to individual plaintiffs. Plaintiffs also challenge the manner in which the INS is administering its suspension program generally against Nicaraguan refugees, rather than challenging individual INS decisions. The issues raised in the complaint are precisely the type of common issues that Rule 23 envisions as properly subject to class action treatment.

■ The Defendants also raise a jurisdictional argument with respect to class certification, claiming that INA § 242(f)(1) bars injunctive relief for the class. The Court finds that INA § 242(f)(1) does not apply. It does not apply because all of INA § 242 does not apply to deportation and exclusion proceeding that were begun before April 1, 1997. IIRIRA § 309(c)(1)(B). All class members began their proceedings before April 1, 1997 and are therefore covered by IIRIRA § 309(c)(1)(B). Also, the section only applies to injunctions of a "provision of Part IV." Plaintiffs do not seek to enjoin the statute. They seek to enjoin constitutional violations and policies and practices of the Defendants that result in pretermission and deportation. Rather than seeking to enjoin the statute, they are seeking its implementation under the appropriate standard.

The Plaintiffs' Motion for Provisional Class Certification is therefore GRANTED.

### THE MOTION FOR TEMPORARY RESTRAINING ORDER

The Plaintiffs have asked the Court to restrain the Defendants, including the Attorney General, the BIA, and officials and employees of the INS, from (1) enforcing the INS policy of pretermitting suspension of deportation applications based upon the interpretation of § 309(c)(5) of IIRIRA in *Matter of N–J–B–*, and (2) deporting named plaintiffs or class members during the pendency of this action. The Court has applied the traditional four-part test for determining whether a temporary restraining order ("TRO") is appropriate, *i.e.*, whether (1) there is a substantial likelihood of success on the merits, (2) the TRO is necessary to prevent irreparable injury, (3) the injury to the plaintiff outweighs any harm to the non-movant, and (4) the TRO would serve the public interest. *Ingram v. Ault*, 50 F.3d 898, 900 (11th Cir.1995). The Court finds, based on the testimony presented by Plaintiffs at the May 13, 1997 hearing, the memoranda submitted by the parties, and counsel's legal argument to the Court, that each of these factors is satisfied and that the issuance of a TRO is mandated.

■ First, the Court finds that there is a substantial likelihood that Plaintiffs will prevail on the merits of their challenge to the INS' interpretation of § 309(c)(5). The decision in Matter of *N–J–B–*, a 7–5 ruling of the BIA, holds that § 309(c)(5) of IIRIRA operates to terminate the right to seek suspension of deportation by Plaintiffs and class members, all of whom were served with orders to show cause prior to obtaining seven years of physical presence in the United States. Plaintiffs have presented a convincing argument that the BIA misinterpreted § 309(c)(5)of IIRIRA, which provision appears to have been intended only to apply to persons who apply for suspension of deportation and who are thereafter placed in removal proceedings by the Attorney General after April 1, 1997. This interpretation gives effect to all the words, *United States v. Menasche*, 348 U.S. 528, 538–39, 75 S.Ct. 513, 519–20, 99 L.Ed. 615 (1955), including those in the relevant sections of IIRIRA (§ 309(c)(5)) and the INA (§ 240A(d)(1)).[4]

---

4. The two sections at issue are IIRIRA § 309(c)(5) and INA § 240A(d)(1). The new law replaces suspension of deportation with a new form of relief called cancellation of removal. Section 240A(d)(1) provides that the right to seek cancellation of removal is cut off if within ten years of entry the person has been placed in a removal proceedings, i.e., "served a notice to appear under section 239(a)". Section 309(c)(5) is a transition rule that states 240A(d)(1) "shall apply to notices to appear issued before, on, or after the date of enactment of this Act." When the statutes are read together, the only reading that gives effect to all the language in both stat-

Other rules of statutory construction also support the Plaintiffs' likelihood of success on the merits. Doubts in statutory construction should be resolved in favor of aliens. *INS v. Cardoza–Fonseca*, 480 U.S. 421, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987); *INS v. Errico*, 385 U.S. 214, 87 S.Ct. 473, 17 L.Ed.2d 318 (1966); *Barber v. Gonzales*, 347 U.S. 637, 642, 74 S.Ct. 822, 825, 98 L.Ed. 1009 (1954). To the degree that the statute is deemed to be ambiguous, it should not be read to disenfranchise tens of thousands of people who would otherwise qualify for suspension of deportation. *INS v. Errico, supra.*

There is also a strong presumption against the retroactive application of legislation. *Landgraf v. USI Film Products*, 511 U.S. 244, 268–69, 114 S.Ct. 1483, 1499, 128 L.Ed.2d 229 (1994). In *Lynce v. Mathis*, —— U.S. ——, ——, 117 S.Ct. 891, 895, 137 L.Ed.2d 63 (1997) the Supreme Court reaffirmed this principle this term when it stated: "The presumption against the retroactive application of the laws is an essential thread in the mantle of protection that the law affords the individual citizen.... In both the civil and the criminal context, the Constitution places limits on the sovereign's ability to use its law-making power to modify bargains it has made with its subjects ..." This Court finds that the application of these rules to § 309(c)(5) of IIRIRA, even if there was an ambiguity in the statute, compels a different determination then that rendered by the majority in *Matter of N–J–B–*. The statute cannot be applied to disenfranchise so many who would have otherwise qualified for suspension of deportation.

Defendants' argument that the Court must be bound by INS' interpretation of the statute fails, because the Court is not bound by a plainly erroneous agency interpretation. *E.g., INS v. Cardoza–Fonseca*, 480 U.S. 421, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987).

This Court accordingly finds that Plaintiffs have demonstrated a substantial likelihood that they will succeed on the merits of their challenge to the BIA's ruling in *Matter of N–J–B–*.

In addition, the Court finds that Plaintiffs have demonstrated a substantial likelihood that they will prevail on their claims of estoppel and Fifth Amendment violations. The Plaintiffs' argument that the United States government lured them into coming forward with applications for suspension of deportation and abandoning their applications for political asylum is very persuasive and satisfies the "substantial likelihood" requirement for a TRO.

Plaintiffs are also likely to prevail on their equal protection claims. The distinction between those persons who have been here substantially in excess of seven years but who were served with papers within seven years and those who are eligible for suspension because they evaded such service for seven years is "wholly irrational". *Yeung v. INS*, 76 F.3d 337 (11th Cir.1995) *modified*, Jan. 2, 1996; *Garberding v. INS*, 30 F.3d 1187 (9th Cir.1994); *Francis v. INS*, 532 F.2d 268 (2d Cir.1979).

Second, the Court finds, based on the evidence presented by Plaintiffs at the May 13, 1997 hearing in this cause, that Plaintiffs and class members would suffer irreparable harm if they are deported to their native countries after having been denied an opportunity to have a hearing on their claims for suspension of deportation. The denial of the suspension of deportation hearing also constitutes irreparable harm. The Court heard compelling testimony, which testimony was credible and persuasive, that Plaintiffs and their class members would suffer extreme hardship if they are denied the right to seek suspension and they are deported to their native countries. The failure to issue a TRO would result in irreparable harm, as Plaintiffs and class members would, in many instances, be separated from their families, forced to return to a country where they would face extreme hardship,

---

utes is that § 309(c)(5) applies only to a person who is issued (but not served with) an Order to Show Cause before September 30, 1996 and thereafter is served with a notice to appear for a removal proceeding under INA § 239(a). The only time that this can occur actually or constructively is when the Attorney General elects under § 309(c)(2) or (3) of IIRIRA to put a person in a removal proceeding who was (or could have been) in a deportation proceeding.

suffer severe emotional trauma, fear, apprehension and panic. In addition there would be a significant financial and emotional hardship.

Third, the Court finds that the harm to the Plaintiffs and their class members substantially outweighs any possible harm to Defendants from a TRO. The failure to issue an injunction would result in irreparable harm to the plaintiffs and the class members. They would be separated in many instanced from their families and forced to go to a country where they may or will suffer extreme hardship. By contrast, the Defendants will be required only to establish a process whereby they will provide the Plaintiffs and class members precisely what was promised to them prior to the advent of the N–J–B– decision. That is, Plaintiffs and their class members will be accorded the suspension of deportation hearings that were widely publicized, that they paid application fees for, and that they were promised by INS prior to the adoption of IIRIRA. If Defendants ultimately prevail, they will have suffered no harm from the delay in going forward with deportations.

Finally, a TRO will greatly serve the public interest, particularly in this community. On the basis of the testimony presented to the Court by Plaintiffs, the Court finds that Plaintiffs and their class members have lived, worked, and raised their families in this community and that their deportation would have a devastating impact on their lives, as well as on the community itself. Many of Plaintiffs and class members have established homes in this community and work in the private sector, paying taxes and sending their children to school. The Court finds that the deportation of 30–40,000 otherwise eligible suspension applicants, from Nicaragua and elsewhere, would have an enormous impact on this community.

For these reasons, the Motion for Temporary Restraining Order is GRANTED in its entirety. The Defendants are restrained, as of the pronouncement of the Court's order in open Court at 6:00 P.M. on May 14, 1996, from deporting the Plaintiffs and class members pending further order of this Court. The Defendants are also temporarily restrained from enforcing *Matter of N–J–B–* and otherwise pretermitting applications for suspension of deportation based on *Matter of N–J–B–* or its rationale.

The Court recognizes, based upon the necessity for discovery before counsel effectively may represent their respective clients in a hearing on a preliminary injunction and its experience in similar class action cases, that counsel cannot reasonably be expected to go forward with a preliminary injunction hearing on an expedited basis. However, given the position of the Defendants in demanding compliance with the provision of Fed.R.Civ.P. 56(b), the Court does hereby set an evidentiary hearing on a preliminary injunction in this matter, for 8:30 a.m., May 27, 1997, at the James Lawrence King Federal Justice Building, Miami, Florida. The government has specifically moved the Court to set the preliminary injunction hearing for May 27, 1997. Said motion was granted at the hearing held May 20, 1997.

The Defendants having insisted upon the immediate setting of a $50,000 bond, and the Court being aware of the impecunious state of the Plaintiffs from the testimony presented at the hearing, and that the potential damage to Defendants from the TRO is all but nonexistent, the Court rejects the Defendants' request as arbitrary and unreasonable. Bond is hereby set in the amount of $100.00.

This Order is in effect for ten days until May 24, 1997, but, may be extended for good cause.

### ORDER DENYING MOTION TO STAY

The Defendants seek a stay of this Court's order granting Plaintiff Class' motion for expedited discovery which became imperative upon the Court's granting of the defense motion for an expedited hearing on preliminary injunction for 9:00 a.m. Tuesday, May 27, 1997.

The Defendants, having demanded and been granted their right to a preliminary injunction hearing within the ten day period

specified in Fed.R.Civ.P. 65(b)[1] now object to the Court requiring expedited discovery of essential testimony and documents the Plaintiff Class requires to support its contention of serious irreparable injury, and deprivation of significant rights guaranteed by the Constitution of the United States.[2]

Since it is the government's inflexible insistence upon their right to a preliminary injunctive hearing within the ten day period from entry of a temporary restraining order that rendered mandatory the entry of this Court's order of May 20, expediting discovery, it would appear that no further discussion is necessary. However, since the Defendants have not clearly set forth in their Mandamus Petition that the preliminary injunction hearing is to be held Tuesday, May 27, and that they were given the opportunity by the Court during the hearings held May 19 and 20, to have orderly discovery procedure (on a non-emergency basis), the Court feels impelled to set forth the procedural history, reflecting the extraordinary length to which the trial court has gone to avoid requiring depositions and discovery on May 24 and 26, 1997.[3] The Defendants, by demanding a preliminary injunction hearing next Tuesday, forced the Court to grant Plaintiffs' motion to expedite discovery.

## HEARINGS HELD TO SET PRELIMINARY INJUNCTION HEARING DATES

At the conclusion of the evidentiary hearing held May 13 and 14, 1997, the Court orally entered a temporary restraining order, dictating its findings and conclusions into the record in open court and in the presence of all parties.[4]

A hearing was then scheduled (May 19) for the specific purpose of picking a date for the preliminary injunction hearing that would enable counsel for both sides to complete essential discovery in an orderly fashion, avoid conflict with prior court commitments and fully comply with Fed.R.Civ.P. 65(b)[5] as requested by Defendants.

Attorneys for the Plaintiff Class estimated the preliminary injunction hearing would require one and one-half to two weeks of full day trial time. Defendants estimated four hours is all that would be required. Counsel argued the length of time yet needed for Defendants to comply with the motions to produce pending since April 24, 1997, and a second motion to produce filed May 18, 1997. The government pointed out the complexities and massiveness of hours involved to furnish the documentary evidence, but indicated that

1. This can be extended for good cause, for an additional ten day period, for a total of twenty days.

2. Although Defendants' motion to stay was not received in the chambers of the undersigned Judge until 8:10 a.m. on this date, the Defendants have taken the extraordinary step of seeking a Writ of Mandamus in the Eleventh Circuit Court of Appeals to prevent furnishing the testamentary and documentary evidence essential for presentation at the evidentiary hearing on preliminary injunction commencing next Tuesday.
   The Plaintiff Class has not had an opportunity to respond to the motion to stay nor has the Court entered an order from which an appeal can be taken as required by Rule 8(a), Federal Rules of Appellate Procedure.
   The Defendants furnished a courtesy copy of the Writ of Mandamus filed with the Eleventh Circuit at the same time the above motion for stay was filed.

3. The Defendants have not furnished a transcript record of two hearings held before the Court on Monday and Tuesday (May 19 and 20) for the express purpose of exploring the options available to the parties to conduct this litigation in an orderly and non-emergency manner.

4. Because of the lateness of the hour, and the necessity for the Court to orally announce its decisions on the Defendants' motion to dismiss the complaint, provisional class certification, and the plethora of legal issues involving estoppel, exhaustion of remedies, due process and equal protection issues, the Court did not announce a date for a preliminary injunction hearing.

5. The Defendants have not filed transcripts to the Court of Appeals of any of the four hearings held thus far, in the record. The Court directed the official court reporter, upon noting this omission at 8:10 a.m. today, to expedite preparation of a transcript in order that a complete record would be available.

   For the reason that no transcript has as yet been completed, the Court will be unable to make reference to transcript pages and will have to rely upon memory of what took place.

they could commence complying by May 23, 1997.[6]

Plaintiffs' attorneys asked that they be furnished with the requested documentation within thirty days followed by a two week period to analyze the data and take depositions. The Plaintiffs indicated they could be ready for either a preliminary injunction hearing or a final hearing on the issues raised in this case within sixty to ninety days.

The government insisted that the hearing on preliminary injunction be set for commencement within the ten day period after entry of the temporary restraining order; arguing, firmly but very politely, that the Defendants had an absolute right to have the Court consider the legal issues of this case (after entry of a TRO) at a preliminary injunction hearing within the ten-twenty day period.

The parties were advised that the Court had a planned overseas vacation during the period May 28 to June 14, 1997. Lead counsel for the Plaintiffs, Mr. Ira Kurzban, announced that he and his family planned to attend the graduation of his daughter from Wellesley College May 29 through June 3, 1997.

In consideration of the difficulty in accomplishing essential discovery and conducting a preliminary injunction hearing within the ten-twenty day limit of Rule 65(b), while fully committed to preserving Defendants' right to have the hearing within that time limit if humanly possible, the Court suggested that the parties consider consenting to a continuation of the temporary restraining order entered May 14, for a period of up to sixty days, at which time the Court would conduct a one and one-half to two week preliminary injunction hearing. The Defendants, after discussion among themselves, stated that they did not consent. They further argued that under Defendants' interpretation of the law, they could commence deporting members of the Plaintiffs Class when the temporary restraining order automatically dissolved at the end of either the ten or twenty day period.

The Court then suggested that the parties agree to scheduling the temporary restraining order on June 16, 1997, thus enabling the undersigned and counsel for the Plaintiffs to adhere to their scheduled family and vacation plans. Defendants again stated that they could not agree to this suggestion.

The Court then announced that it would follow the mandate of Rule 65 and schedule the preliminary injunction hearing within the ten or twenty day period. The hearing adjourned to be reconvened the following morning at nine o'clock when the parties were required to report to the Court the time estimates for conducting the hearing (more sharply defined), the number of absolutely essential witnesses that would be required to be present, and the extent of documents to be produced.

The hearing resumed on May 20, again for the express purpose of selecting a date within the ten or twenty day period and within which essential discovery could be completed. The government was again asked if they could agree to a short thirty or sixty day delay so that the emergency nature of these proceedings would be eliminated, which the Defendants declined.

Upon consideration of the essential discovery that yet needed to be done, and in consideration of the Defendants' inflexible demand to commence resolving these issues at the preliminary injunction hearing within the ten or twenty day period, the Court ruled as follows:

1. The government's motion for a preliminary injunction hearing to be set for May 27, 1997 at 9:00 a.m. was granted.[7]

    The government announced that it took the legal position that the Court would have to (a) conduct the hearing, and (b) complete its judicial labor by entering whatever opinion would be forthcoming at that time on the preliminary restraining order issue within the ten day extended to twenty day time frame.

---

6. Mr. Dexter Lee, attorney for the Defendants, said that full compliance could not be had in less than two weeks.

7. The government agreed that a hearing commenced on that date would be within the ten days contemplated by Fed.R.Civ.P. 65(b) and that the temporary restraining order would continue to be in full force and effect until that date.

2. The Court granted Plaintiff Class' motion for expedited discovery, setting the deposition for the only two working days left before the commencement of the preliminary injunction hearing on May 27 namely, for Saturday, May 24 and Monday, May 26.

3. The Court granted Plaintiff Class' motion for expedited document discovery to be furnished on Friday, May 23, 1997, in order that counsel for Plaintiffs could review the materials over night before commencing the discovery depositions on Saturday, May 24, 1997.

It is this order expediting discovery that Defendants seek to have reviewed by Writ of Mandamus in the Eleventh Circuit Court of Appeals.[8]

### CONCLUSION

For the foregoing reasons, it is clear that the Court was forced to order expedited discovery by the action of the Defendants in insisting upon a hearing within the ten-twenty day mandate of Rule 65.

The Court made abundantly clear that if the government could simply agree to a short continuance of the temporary restraining order that the issues presented in this litigation could be resolved in an orderly fashion without requiring anyone to travel or be deposed on weekends and holidays.

The Court is still willing to schedule the preliminary restraining order at a more convenient time for the parties and litigants subject to the preservation of the status quo until these matters can be resolved.

Wherefore, it is

ORDERED, ADJUDGED and DECREED that the Defendants' motion to stay, filed with the Court at 8:10 a.m., May 22, 1997 be, and the same is hereby DENIED. It is further

ORDERED, ADJUDGED and DECREED that the Defendants cause to be forthwith filed with the Clerk of the United States Court of Appeals for the Eleventh

Judicial Circuit, a transcript of testimony of the two hearings held on Monday and Tuesday, May 19 and 20, 1997, wherein the Court exhaustively explored all reasonable options for an orderly processing of the issues raised in this case. It is further

ORDERED, ADJUDGED and DECREED that a copy of this order be transmitted by facsimile to Ira J. Kurzban, Esq., Dexter Lee, AUSA, and Clerk of Court, Eleventh Circuit Court of Appeals.

---

8. At the time the Mandamus was sought, as noted above, counsel for the Plaintiffs had not had an opportunity to respond nor has the Court had an opportunity to enter an order on Defendants'

motion for stay filed at 8:10 a.m. May 22, 1997. In short, the government sought mandamus from a ruling not yet moved for or ruled upon.