Amparo **CAMPOS**, et al., Plaintiffs,

v.

**IMMIGRATION AND NATURALIZATION SERVICE**, et al., Defendants.

No. 98–2231–CIV.

United States District Court, S.D. Florida.

Oct. 16, 1998.

Jonnell Newman, Florida Justice Institute, Inc., Charles F. Elsesser, Jr., Florida Legal Services, Inc., Lisette Losada, Miami, FL, for Plaintiffs.

Dexter Lee, Office of U.S. Attorney, Miami, FL, Alice E. Loughran, Teresa A. Wallbaum, Linda Sue Werner, Office of Immigration Litigation, U.S. Dept of Justice, Washington, DC, for Defendants.

Elizabeth Lewis Bevington, Holland & Knight, Tampa, FL, for Amicus.

### ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

GOLD, District Judge.

The seven named plaintiffs in this lawsuit are poor, disabled, legal permanent residents who are attempting to become naturalized United States citizens. All but two of the plaintiffs have already been denied citizenship because their requests for medical waivers were refused and they failed to pass the English and civics requirements of the Immigration and Naturalization Act (INA), 8 U.S.C. section 1423. Plaintiffs are seeking an injunction with respect to those two plaintiffs who have not yet been denied citizenship, Josefina Lopez and Angela Rodriguez. The defendants have notified Lopez and Rodriguez that their applications for medical waiver have been denied and that they will be required to pass the English and civic requirements. Final naturalization examinations and interviews with Rodriguez and Lopez had been scheduled for September 25 and September 28, 1998, respectively. Due to a temporary restraining order entered by this court on September 22, 1998, those interviews were not held. Plaintiffs ask this court to enter a preliminary injunction precluding those two examinations and interviews from going forward until after this court has an opportunity to rule on the relief requested in the class action complaint which challenges the defendants' practices for evaluating medical waivers in naturalization proceedings. Plaintiffs contend that granting this injunctive relief for Rodriguez and Lopez would "preserve the status quo during the course of litigation in order to prevent irreparable injury to the moving party and in order to preserve the ability of the court to render complete relief." The court held a hearing on plaintiffs' motion for preliminary injunction at which time the parties submitted affidavits and other documentary evidence.

### I. THE PLAINTIFFS

**The Class Action Complaint.** The plaintiffs seek injunctive, mandatory, and declaratory relief for a class of persons who are "poor, disabled legal permanent residents of the United States who have applied for and are eligible for naturalization but who are unable, due solely to a physical or developmental disability or mental impairment to learn basic English and the fundamentals of United States history and government (Civics) so as to pass the En-

glish and Civics portion of the naturalization exam."

Pursuant to 8 U.S.C. § 1423(b)(1), and implementing regulations and interpretations, Congress has provided for a "medical waiver" of the English and civics portion of the naturalization exam for persons who are ill or severely handicapped. According to the complaint, the defendants have "maintained a systematic and Miami District-wide policy of refusing to evaluate requests for medical waivers as required by statute and their own regulations and guidelines, of evaluating all applications for medical waivers in a standardless, totally arbitrary and idiosyncratically capricious manner and of refusing to inform the members of the plaintiff class of the bases for the denial of their requests or even the standards used to deny them." Consequently, the named plaintiffs, on behalf of themselves and all others similarly situated, seek injunctive relief compelling the defendants to:

(a) evaluate all pending and future requests for medical waivers of the English and Civics portion of the naturalization examination as required by 8 U.S.C. § 1423(b)(1), 8 C.F.R. §§ 312.1 and 312.2, the implementing guidelines and such uniform standards as are hereafter developed;

(b) reevaluate all requests for medical waivers of the English and Civics portion of the naturalization examinations which have been denied at any time since March 19, 1997, pursuant to the requirements of 8 U.S.C. § 1423(b)(1), 8 C.F.R. §§ 312.1 and 312.2, the implementing guidelines and such uniform standards as are hereafter developed;

(c) develop standards for the evaluation of the sufficiency of requests for medical waivers of the English and Civics portion of the naturalization examinations which are consistent with 8 U.S.C. § 1423(b)(1), 8 C.F.R. §§ 312.1 and 312.2 and the implementing guidelines;

(d) publish in the Federal Register and make available to the public the standards utilized by the defendants, including such uniform standards as are hereafter developed, for the evaluation of the sufficiency of requests for medical waivers of the English and Civics portion of the naturalization examinations;

(e) provide notice of the reasons for the rejection of the medical waiver sufficient to allow the applicant to understand the bases for the rejection and, if possible, to correct them, to all applicants for naturalization whose requests for medical waivers of the English and Civics portion of the naturalization examinations have been rejected.

**The Motion for Preliminary Injunction Pertaining to Rodriguez and Lopez.** This case is presently before the court on Plaintiffs' Motion for Preliminary Injunction. Plaintiffs seek a preliminary injunction prohibiting the Immigration and Naturalization Service (INS) from proceeding with the naturalization examinations and interviews of Rodriguez and Lopez until after it has ruled on the matters raised in the class action complaint. Discovery has not yet commenced in this case and the matters raised in the class action complaint are not yet ripe for resolution. Thus the sole issue to be decided at this time is whether the plaintiffs have established the requisite elements for a preliminary injunction barring the INS from proceeding with the naturalization interviews scheduled for Rodriguez and Lopez until the court has decided the merits of the class action. In determining whether the plaintiffs are entitled to the requested injunctive relief, the court has reviewed and considered the affidavits submitted by, or on behalf of all of the named plaintiffs. For reasons of brevity, however, it has confined its factual statement to only those facts relating to the naturalization applications filed by Rodriguez and Lopez.

**Angela Rodriguez.** Rodriguez immigrated to this country from Cuba in 1992 and was granted permanent legal residency.

She applied to become a U.S. citizen as soon as she completed the required five years of legal residency, in 1997. Rodriguez's physician, Dr. Miguel A. Mier, completed an application for medical waiver, an INS N–684 form, on the basis that Rodriguez has severe disabilities that make it impossible for her to learn the English language and pass a civics examination. Under penalty of perjury, Dr. Mier swore that Rodriguez has organic brain syndrome and arterial hypertension, which cause her to suffer memory loss, poor concentration and a decline in her mental functioning. Because organic brain syndrome and arterial hypertension are progressive ailments, Rodriguez's condition has grown worse since 1997.

At Rodriguez's June 1998 naturalization interview, she provided the INS N–648 form to the INS officer. On the form, Dr. Mier averred that he was a board-certified family practitioner specializing in geriatrics who had been treating Angela Rodriguez for approximately three years. Dr. Mier explained that Rodriguez was suffering from a combination of difficult ailments, including organic brain syndrome, which require her to be under constant supervision and render her unable to care for herself. After describing his patient's medical condition, Mier concluded that "[b]ased on the above, it is my professional Medical opinion, that Angela Rodriguez is unable to learn even basic English, let alone U.S. Civics of history, and that it is no fault of her own that she can not comprehend an examination to demonstrate

basic knowledge of the English language."[1] Additionally, Dr. Mier gave his medical license number and other required information, including his certification that the conditions described above are permanent and not caused by use of illegal drugs.

Despite all this information, at her June interview, the INS officer gave Rodriguez a form letter stating that defendants would not accept her N–648. Every possible reason for rejecting the N–648 was checked off on that form letter. Included among the listed deficiencies were: 1) "Identify the applicant on the medical certification," 2) "Identify the condition clearly and how it is related to her capacity to learn," and 3) "Establish your qualifications to make this medical certification." In fact, all this information had been provided by Dr. Mier on the N–648 form rejected by the Immigration and Naturalization Service. The form letter instructed Rodriguez to present a properly prepared N–648 with the missing information to the defendants by August 5, 1998.

Neither Rodriguez nor her doctor was provided with specific information about the actual deficiencies or told what additional information was required by the INS. Nonetheless, Rodriguez returned to Dr. Mier, who completed another N–648 form which was submitted to the INS in July 1998. By letter dated August 25, 1998, the INS again declined Rodriguez's request for medical exception and advised her that she would be required to satisfy

---

1. Dr. Mier swore to the following information on the form: Ms. Angela Rodriguez has been my patient for approximately three years. She is an elderly 78 year-old woman who is suffering from a difficult combination of ailments including Organic Brain Syndrome (Diagnosis 310.9), and Arterial Hypertension (401.9). Her conditions are complicated by a recent Right Hip Operation and deteriorating general health associated with the normal aging process. . . . . The complex combination of ailments above described have resulted in a progressive deterioration of her cognitive functions with a decline in functional level[,] poor memory and poor concentration. Al-

though she is aware of her surroundings and is still able to express herself with limited clarity, she requires constant supervision and is unable to care for herself. Under these condition[s], this patient's potential for learning complicated new material such as a new language and/or replying to an interrogatory in a foreign language are practically nil. . . . Based on the above, it is my professional Medical opinion, that Angela Rodriguez is unable to learn even basic English, let alone U.S. Civics of history, and that it is no fault of her own that she can not comprehend an examination to demonstrate basic knowledge of the English language.

the English and Civics requirements of the INA. The defendants never attempted to contact Dr. Mier to answer questions about Rodriguez' condition, did not seek to have Rodriguez examined by an INS medical doctor, clinical psychologist, or any other medical professional.

The next interview with INS will be Rodriguez's last chance to have her 1997 application for citizenship approved. Because she cannot pass the English and civics requirements of the INA, she expects to receive a final denial of her application for citizenship at that interview. Rodriguez is very concerned that she may not survive long enough to reapply for citizenship and await the processing of any new application or the processing of any request for appeal on her current application. Both those processes take approximately two years and ultimately are decided by the same INS staff in the Miami District office who have already twice denied Rodriguez's request for a medical waiver.

**Josefina Lopez.** Lopez is an 84 year old legal permanent resident from Cuba who applied for citizenship in March, 1997. She suffers from a number of complicated cardiac and circulatory insufficiency abnormalities, including aggressive cardiac arrhythmia, arterial fibrillation and a malady known as sick sinus syndrome. The circulatory abnormalities affect normal blood flow to all parts of the body, including major organs and the brain. Due to the restrictions on her brain's blood supply and the daily medications she takes, Lopez is prone to lethargy and syncopal episodes with marked diminution of her cognitive functions, reasoning ability, judgment and memory. These disabilities and treatment render Lopez unable to learn English.

On August 25, 1998, Lopez reported first citizenship interview where she turned in a form N–648 prepared and executed by her treating physician who is board-certified in internal medicine. On the N–648, the physician certified that Lopez suffers from the conditions described above and that they prevent her from learning English. The INS officer took the N–648 form and returned about ten minutes later. He informed Lopez that her N–648 had been rejected and that she would have to return with an additional N–648 that provided an "accurate assessment" of her disability.

Lopez alleges that she is extremely confused by this notice and does not know how to provide additional information that will satisfy defendants' requirements for a disability waiver. Defendants never contacted Lopez's doctor to answer any questions about her condition, nor did they have her examined by an INS medical doctor or clinical psychologist. Defendants never provided Lopez a meaningful notice of the basis for her rejection, the standards employed or the means to cure the deficiencies. Lopez is scheduled for a final interview, but she will be unable to pass the English and civics requirements of the INA. Like Rodriguez, Lopez is worried that because of her advanced age and poor health, she may not survive long enough to reapply for citizenship and await the processing of her new application or survive an appeal of her current application.

## II. THE NATURALIZATION PROCESS

The naturalization process is generally divided into four stages. First, a naturalization applicant must complete and submit an N–400 citizenship application to the Immigration and Naturalization Service. 8 U.S.C § 1445(a); 8 C.F.R. § 334.2. Second, the INS conducts a background investigation of the applicant, including review of all pertinent records, police department checks, and, unless waived by the Attorney General, a neighborhood investigation. 8 U.S.C § 1446(a); 8 C.F.R. § 335.1. Third, the applicant is interviewed and examined by an INS officer. As part of that examination process Congress has required that, unless waived, an applicant for naturalization must demonstrate "an understanding of the English language, including an abili-

ty to read, write and speak words in ordinary usage...", 8 U.S.C. § 1423(a)(1), and a "knowledge and understanding of the fundamentals of the history, and of the principles and form of government of the United States" 8 U.S.C. § 1423(a)(2). In order to lessen the impact of these requirements on otherwise qualified immigrants, Congress also provided that the "English language" and "history and civics" requirements "shall not apply to any person who is unable because of physical or developmental disability or mental impairment to comply therewith." 8 U.S.C. § 1423(b)(1).[2] This exemption from the "English language" and "history and civics" requirements is termed the "medical waiver exemption". Fourth, the last stage of processing is the scheduling of an applicant for the oath ceremony. 8 U.S.C. §§ 1421, 1448; 8 C.F.R. Parts 310, 337.

## III. THE MEDICAL WAIVER EXEMPTION PROCESS

The INS has issued regulations and supplemental policy guidance on the procedural mechanics of the disability waiver exemption. *See* 8 C.F.R. § 312.2(b)(2) (1998); *see also* INS Supplemental Policy Guidance for Field Offices. The applicant initiates the waiver process by submitting an INS Form N–648, Medical Certification for Disability Exceptions, that must be completed by a licensed medical doctor or licensed clinical psychologist. 8 C.F.R. § 312.2(b)(2) (1998). Under the regulations, a naturalization applicant seeking a disability waiver exemption must establish that (1) he or she has an impairment, (2) that it is "medically determinable," (3) that it meets the 12-month duration require-

ment (*i.e.*, not a temporary condition), and (4) that it is severe enough and results in functioning so impaired as to render him or her unable to demonstrate an understanding of the English language or United States civics, even with reasonable accommodations or modifications. *See* 8 C.F.R. §§ 312.1(b)(3), 312.2(b)(1) (1998). An impairment is "medically determinable" if it results from anatomical, physiological, or psychological disabilities, and not from an individual's use of illegal drugs. *Id.* The burden of proving the disability waiver exemption is on the applicant. *See* 8 C.F.R. §§ 312.1(a), 312.2(a) (1998); *see also* 8 C.F.R. § 316.2(b) (1998).

The N–648 form serves as both an application for a medical waiver exemption and an attestation by the medical professional to the INS as to the origin, nature and extent of the medical condition. *Id.* The physician must sign a statement on the Form N–648 certifying that he or she has answered all the questions in a complete and truthful manner. To further allay INS fears of fraud, the physician must attest "that any knowingly false or misleading statements may subject the medical professional to the penalties of perjury pursuant to title 18, United States Code, Section 1546 and to civil penalties under section 274C of the Act." *Id.*

A central concern of the INS regulations and policies is that medical determinations concerning the applicant's ability to comply with the English language and civics requirements must be made by a qualified medical professional. Accordingly, INS policy provides that "it is the responsibility of the medical professional to make the

---

**2.** Congress enacted the disability waiver in its present form in October 1994. *See* INA section 312(b)(1), 8 U.S.C. § 1423(b)(1) (1994), as amended by the Immigration and Nationality Technical Corrections Act of 1994 ("INTCA"), Pub.L. 103–416 (Oct. 25, 1994). INA section 312(b)(1) provides that an applicant for naturalization is exempted from the English language and civics requirements if he or she is unable to comply with these requirements due to a "physical or developmental

disability" or "mental impairment." Congress did not specifically define the terms "physical or developmental disability" or "mental impairment." On March 19, 1997, the INS issued implementing regulations clarifying the meaning and effect of these terms. *See* "Exceptions To The Educational Requirements for Naturalization for Certain Applicants," 62 Fed.Reg. 12915 (Mar. 19, 1997) (final rule). .

medical determination." Supplemental Policy Guidance 3/12/97, p. 7. "These medical professionals shall be experienced in diagnosing those with physical of mental medically determinable impairments" and shall also be able to "attest to the origin, nature and extent of the medical condition as it relates to the disability exceptions". 8 C.F.R. § 312.2(b)(2).

INS officers reviewing the medical waiver requests are reminded by INS policy that they "are not medical professionals, advocates, or social workers and should not place themselves in the position of attempting to second guess the medical evaluation of the qualified medical professional certifying a disability exception on the N–648. Nor should the officers place themselves in the position of being a medical professional and thereby denying the existence of a disability." Supplemental Policy Guidance 3/12/97, p. 7.

The regulations further provide that "the Service also reserves the right to refer the applicant to another authorized medical source for a supplemental disability examination. This option should be invoked when the Service has *credible doubts about the veracity of a medical certification* that has been presented by an applicant". 8 C.F.R. § 312.2(b)(2) (emphasis added).

The instructions then set forth a detailed procedure which must be followed prior to the requesting a second medical certification from an applicant. These procedures include attempting to reach the medical professional who completed the N–648 to answer any questions the officer may have regarding the certification. If after consultation with the medical professional, it is determined that supplemental records from the applicants medical file would satisfy the concerns of the officer, the records should be requested. If any of these procedures fail to satisfy the officer as to the accuracy of the determination or the validity of the credentials of the medical professional, the officer must consult with his supervisor and obtain permission to require the applicant to obtain a second disability certification. Supplemental Policy Guidance 3/12/97, p. 11. Finally, the guidelines caution against requesting a second medical certification unless absolutely necessary because of the inconvenience it causes the applicant:

> Officers are instructed to use *extreme restraint* in exercising these options and should only do so when doubts remain after the steps outlined...have been completed...DAOs should note that the burden is on the applicant to pay for any second certification, and should take this fact into consideration. *Officers should always remember that they are responsible for determining the eligibility for naturalization not for making or rendering a medical determination.*

Supplemental Policy Guidance 3/12/97 p. 10 (original emphasis).

## IV. THE CHALLENGED PRACTICES

Plaintiffs contend that the defendants, as a matter of practice and policy, violate every tenet of the disability waiver procedure provided for by the INA, 8 U.S.C. section 1423(b)(1), its implementing regulations, 8 C.F.R. sections 312.1(b)(3), 312.2(b)(1) and (b)(2), and published INS guidance. They argue that defendants' systematic practice and policy of violating the statute and regulations is unlawful under the Freedom of Information Act, 5 U.S.C. section 552, the Administrative Procedures Act, 5 U.S.C. sections 553, 555(e), 701 et seq., and the Due Process Clause of the Fifth Amendment. Specifically, the plaintiffs allege that the defendants engage in the following acts as a matter of practice and policy:

> a. Reject and deny properly completed N–648 Requests for Medical Waiver by "second guessing" the medical determination of the medical professional and substituting their own medical determination for the medical determination of the medical professional, without having the applicant

evaluated by an INS medical doctor or clinical psychologist;

b. Reject and deny properly completed N–648 Requests for Medical Waiver despite a completed attestation by a medical professional as to the origin, nature and extent of the medical condition as it relates to the disability, without examining the applicants records or referring the applicant to another physician for a second opinion.

c. Reject and deny properly completed N–648 Requests for Medical Waiver despite the physician's attestation that the disability determination is made under penalty of perjury, pursuant to 18 U.S.C. section 1546 and civil penalties under the Act without attempting to reach the physician to discuss the matter.

Denying the plaintiffs' allegations, defendants assert that the practices and procedures followed in the Miami Naturalization Unit comply with the INA and published regulations. Defendants have set forth the following chronology as their procedure for reviewing waiver requests. Initial determinations are made by Supervisory District Adjudication Officers. The officer's determination is normally reviewed by a Public Health Service registered nurse temporarily stationed on the premises. If the nurse recommends against approving the waiver, she must refer the case to a Public Health Service physician and obtain the physician's concurrence on the decision.

If the officer determines that the Form N–648 is incomplete or insufficient, the INS issues a deficiency notice and gives the applicant an opportunity to provide the deficient information. If the applicant thereafter does not produce sufficient information for the officer or nurse to make a reasoned determination, or if the claimed disability or impairment does not qualify

under the regulatory standard, the INS will notify the applicant that the Form N–648 has not been approved. The applicant is given two separate opportunities to pass the language and civics examinations. If the applicant presents a new Form N–648 at either the scheduled or re-scheduled examination, the officer will consider the new form and make a determination on whether it satisfies the regulatory standard. In those cases where the applicant does not obtain a disability waiver or pass the language and civics examinations, the INS can deny the application for naturalization on this ground.

## V. JURISDICTION

■ The plaintiffs challenge the INS's "current practices and policies in the Miami District for evaluating requests for medical waiver of the English language and Civics portion of the naturalization exam." The complaint alleges that these practices and policies deprive naturalization applicants of their statutory and constitutional rights.[3] No challenge is made with respect to the merits of any individual INS determination. Consequently, the court finds that it has federal question jurisdiction to consider the plaintiffs' constitutional and statutory challenges to the defendants' practices and policies concerning the evaluation of medical waivers. *See McNary v. Haitian Refugee Ctr.,Inc.*, 498 U.S. 479, 111 S.Ct. 888, 896, 112 L.Ed.2d 1005 (1991)(a district court has federal question jurisdiction to hear constitutional and statutory challenges to INS procedures). The Eleventh Circuit has repeatedly held that district courts have jurisdiction to review allegations of systematic abuses by INS officials. In *Haitian Refugee Center v. Smith*, 676 F.2d 1023 (5th Cir. Unit B 1982), the appellate court affirmed a district court's finding that it had jurisdiction to review a

---

**3.** Specifically, the complaint alleges that the defendants practices and policies violate 8 U.S.C. § 1423(b)(1), 8 C.F.R. §§ 312.1 and 312.2, 5 U.S.C. § 701 et seq., 5 U.S.C. § 552,

5 U.S.C. § 553, 5 U.S.C. § 555(e) and the Fifth Amendment to the United States Constitution.

complaint which challenged the INS's procedures for processing asylum requests and addressed "matters alleged to be part of a pattern or practice by immigration officials to violate the constitutional rights of a class of aliens." Such matters were held to be "independently cognizable in the district court under its federal question jurisdiction." *Id.* at 1033. This conclusion was reaffirmed in *Jean v. Nelson,* 727 F.2d 957 (11th Cir.1984) (en banc), where the court explained that to postpone "judicial resolution of a disputed issue that affects an entire class of aliens until an individual petitioner has an opportunity to litigate it" would undermine Congress' intent to eliminate delay and procedural redundancy in immigration matters. *Id.* at 980.

▉ The defendants argue that the plaintiffs' claims are precluded by their failure to exhaust their administrative remedies because the appeals process allows *de novo* reconsideration of disability waiver and naturalization applications before both the administrative agency and the district court. See 8 U.S.C. sections 1421(c) and 1447(a). But this argument was considered and rejected in *Haitian Refugee Center, Inc. v. Nelson,* 872 F.2d 1555 (11th Cir.1989), which involved a challenge to INS policies and practices in connection with applications for temporary residence. There the INS had argued that the plaintiffs' claims were barred by an exhaustion requirement imposed by statute as well as a judicially-created exhaustion requirement. Rejecting the INS's statutory exhaustion argument, the court held that where the plaintiffs challenged the adequacy of the procedures employed by the INS in processing their applications, rather than seeking substantive review of any individual ruling respecting their status, the exhaustion requirement imposed by section 1105a had no bearing on the district court's jurisdiction. As for the judicially-created exhaustion requirement, the court reasoned that exhaustion is not required if the administrative remedy would not provide relief commensurate with the claim. *Id.* at 1560. Where the nature of plaintiffs' constitutional challenge of INS procedures is such that relief at the administrative review level is unlikely and the chances are remote that the INS would respond positively to an individual's constitutional challenges to it procedures, the exhaustion doctrine is not a bar to the district court's assertion of jurisdiction. *Id.* (citing *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)) and *Haitian Refugee Center v. Smith,* 676 F.2d at 1034(exhaustion of remedies not required because case involved a constitutional challenge to procedures adopted by the INS for the processing of asylum claims).

In this case, the only administrative remedy available to Lopez and Rodriguez is a request for a hearing (also referred to as an "appeal") of the ultimate denial of citizenship. 8 C.F.R. § 336.2. This appeal is heard by another staff officer at the Miami District Office of at least similar grade to the officer who initially denied the claim. *Id.* That appeal process currently takes one year to eighteen months. Lopez and Rodriguez could only *thereafter* seek judicial review of the INS officer's decision on appeal. 8 U.S.C. § 1421(c). Furthermore, because the plaintiffs have never received meaningful notice regarding the deficiency of the original claim, the appeals will likely employ the same unknown criteria used in making the initial determination. Based on Eleventh Circuit precedential authority, as stated above, the court finds that the statutory exhaustion requirement is inapplicable in this case.

## VI. LEGAL STANDARD FOR PRELIMINARY INJUNCTION

▉ A party seeking a preliminary injunction must demonstrate (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm if the injunction is not granted; (3) the threatened injury to the plaintiff outweighs

any potential harm to the defendant; and (4) granting the injunction would not be adverse to the public interest. *Warren Publishing Inc. v. Microdos Data Corp.*, 115 F.3d 1509 (11th Cir.1997); *Teper v. Miller*, 82 F.3d 989, 992–93 n. 3 (11th Cir.1996); *Haitian Refugee Center, Inc.*, 872 F.2d 1555, 1561–62 (11th Cir.1989);*Canal Authority v. Callaway*, 489 F.2d 567, 572 (5th Cir.1974). The standard is not rigidly applied by assigning a fixed quantitative value to each of the four factors. Rather, the court must use a flexible scale which balances each consideration and arrives at the most equitable result given the particular circumstances.

■ The issuance of a preliminary injunction is an extraordinary equitable remedy which should not be granted absent a clear showing that the moving party has met its burden of proof. *Cafe 207 v. St. Johns County*, 989 F.2d 1136, 1137 (11th Cir.1993). Preserving the court's ability to render a meaningful decision after a trial on the merits is the primary justification for granting a preliminary injunction. *Parks v. Dunlop*, 517 F.2d 785, 787 (5th Cir.1975); *Tefel v. Reno*, 972 F.Supp. 623, 633 (S.D.Fla.1997). Findings made on an application for preliminary injunction are not controlling at a later hearing on a permanent injunction. *E. Remy Martin & Co. v. Shaw–Ross Int'l Imports, Inc.*, 756 F.2d 1525, 1527 n. 1 (11th Cir.1985). With these basic principles in mind, the Court now turns to the merits of the preliminary injunction application in this case.

## A. Substantial Likelihood of Success on the Merits.

■ A fundamental principle of federal law is that a federal agency must follow its own rules. *Morton v. Ruiz*, 415 U.S. 199, 233–235, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974) ("[W]here the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures.").

The failure of an agency to follow its own regulations constitutes arbitrary and capricious conduct. *Boyd v. Secretary of Agriculture*, 459 F.Supp. 418 (D.S.C.1978). The courts must overturn agency actions which do not scrupulously follow the regulations and procedures promulgated by the agency itself. *U.S. v. Heffner*, 420 F.2d 809, (4th Cir. 1969)...

*Simmons v. Block*, 782 F.2d 1545, 1550 (11th Cir.1986). These principles apply to INS as much as any other agency. "[I]t is clear...that agency deviation from its own regulations and procedures may justify judicial relief...[citations omitted]", *Haitian Refugee Center v. Smith*, 676 F.2d 1023, 1041 (5th Cir. Unit B 1982). *See also Jean v. Nelson*, 727 F.2d 957 (11th Cir.1984); *Nicholas v. INS*, 590 F.2d 802, 809, (9th Cir.1979), (holding that INS violated its own regulation on processing a noncitizen's request for immigration records); *Louis v. Nelson*, 544 F.Supp. 973 (S.D.Fl.1982); *Tefel v. Reno*, 972 F.Supp. 608 (S.D.Fl.1997). A violation by an agency of its own regulations also constitutes a violation of the Administrative Procedures Act in that the agency's action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law". 5 U.S.C. § 706(2)(A).

Where judicial review includes actions taken pursuant to agency regulations, validly promulgated regulations have the force of law. *Frisby v. United States Dep't of Hous. & Urban Dev.*, 755 F.2d 1052, 1055 (3d Cir.1985). When an agency fails to act in compliance with its own regulations, such actions are "not in accordance with law." (citations and quotations omitted).

*Raymond Proffitt Foundation v. U.S. Environmental Protection Agency*, 930 F.Supp. 1088, 1104 (E.D.Pa.1996).

■ The court has reviewed the materials submitted by the parties, including the affidavits of many of the plaintiffs or their family members, several plaintiffs' disability waiver documents, and affidavits filed by INS officers and medical person-

nel. Based on this review, the court finds that the evidence submitted of record as of this date, including the materials submitted by the defendants, demonstrate that the INS is not following its own regulations. For example, defendants' witness, Dr. Rivera, has submitted an affidavit that supports a conclusion that the defendants are second guessing the medical determinations expressed on the N–648 forms by substituting their own medical opinions without first reviewing the applicant's medical records, consulting with the applicant's physician or referring the applicant to another medical source for an additional opinion. Based solely on her review of the N–648 form, Dr. Rivera concluded that Lopez was not disabled. Rivera's stated reason for reaching this conclusion suggests she simply disagreed with the treatment prescribed by Lopez's physician.

> Based on my review of the Form N–648, I concluded that the described severity of the illness was inconsistent with the medical treatment she appears to be receiving, i.e., the failure to insert a pacemaker. The insertion of a pacemaker, regardless of age or general conditions, is standard medical practice in cases of such severity in order to permit the patient to function properly. Such a procedure would decrease or eliminate Ms. Lopez's alleged impairment of cognitive functions.

The regulations provide that where the INS has creditable doubts about the veracity of a physician's determination, it can request records or refer the applicant to another medical source. 8 C.F.R. section 312.2(b)(2). The March 12, 1997 interpretations emphasize the need to accept the medical judgment of the medical practitioner absent fraud or some other extraneous factor affecting veracity. They state that reviewing officers "should not place themselves in the position of attempting to second guess the medical evaluation of the qualified medical professional certifying a disability exception on the N–648" and that "Officers should always remember that they are responsible for determining the eligibility for naturalization not for making or rendering a medical determination."

The record also suggests that neither the plaintiffs nor their physicians are informed of the reasons their applications were denied. Nor are they instructed on the standards that are being used to determine eligibility for medical waivers. The Freedom of Information Act, 5 U.S.C. § 552, precludes an agency from utilizing any rules, statements of policy, or interpretations that have not been published or indexed and made available to the public.

> A final order, opinion, statement of policy, interpretation, or staff manual or instruction that affects a member of the public may be relied on, used or cited as precedent by an agency against a party other than an agency only if -
>
> (i) it has been indexed and either made available or published as provided by this paragraph; or
>
> (ii) the party has actual and timely notice of the terms thereof.

5 U.S.C. § 552(a)(2).

Additionally, a goal of the Administrative Procedures Act and the Freedom of Information Act is to assure that individuals in the administrative process are informed of the reasons for administrative decisions. The Administrative Procedures Act, 5 U.S.C. § 555(e), requires that any notice of denial "shall be accompanied by a brief statement of the grounds for denial." The record shows that the rejection notices provided by the INS do nothing to assist the applicant in understanding the basis for the denial. For example in the case of Rodriguez, the denial was meaningless because every box on the form had been marked, even though the applicant clearly complied with those requirements.

■ Not only does the failure to provide meaningful notice violate the Administrative Procedures Act, 5 U.S.C. § 555(e), it also deprives the plaintiffs of their procedural due process rights guaranteed under the Fifth Amendment. It is axiomatic

that the most minimal "fair procedures" required by due process include a meaningful notice. The essence of due process is the requirement that "a person in jeopardy of serious loss [be given] notice of the case against him and an opportunity to meet it." *Mathews v. Eldridge*, 424 U.S. 319, 348, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Or, as stated in *Gray Panthers v. Schweiker*, 652 F.2d 146 (D.C.Cir.1980):

> It is universally agreed that adequate notice lies at the heart of due process. Unless a person is adequately informed of the reasons for denial of a legal interest, a hearing serves no purpose—and resembles more a scene from Kafka than a constitutional process.

*Id.*, at 168.

A determination on a motion for preliminary injunction is usually made at a time when the parties have not yet had an opportunity to conduct discovery and the matters to be addressed at trial have not yet been fully developed. *Mitsubishi Int'l Corp. v. Cardinal Textile Sales, Inc.*, 14 F.3d 1507 (11th Cir.1994). Accordingly, it is not necessary that plaintiffs be able

> in an abbreviated proceeding, to prove with certainty eventual success....[T]he importance and nature of the [likelihood of success] requirement can vary significantly, depending upon the magnitude of the injury which would be suffered by the movant in the absence of interlocutory relief and the relative balance of the threatened hardship.

*State of Texas v. Seatrain International*, 518 F.2d 175, 180 (5th Cir.1975) (citing *Canal Auth. of State of Florida v. Callaway*, 489 F.2d 567 (5th Cir.1974)). In light of the aforementioned factors, the court finds that the plaintiffs have shown a substantial likelihood of success on the merits, particularly with respect to their due process claim.

**B. Irreparable Injury.**

Plaintiffs Rodriguez and Lopez argue that they will be irreparably injured if the court permits the interviews to proceed as scheduled because they are unable to comply with the English and civics requirements of the INA due to their disabilities and the defendants will deny them citizenship based on their inability to comply with these requirements. Rodriguez and Lopez contend that if they are denied citizenship, they will lose the opportunity to vote, receive benefits, or otherwise fully participate in our democracy as United States citizens.[4] The law is well established that denial of the opportunity to vote is irreparable injury per se. *E.g., NAACP v. Alabama*, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958); *Reynolds v. Sims*, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964); *Lubin v. Panish*, 415 U.S. 709, 94 S.Ct. 1315, 39 L.Ed.2d 702 (1974); *Anderson v. Celebrezze*, 460 U.S. 780, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983); *Williams v. Salerno*, 792 F.2d 323 (2d Cir.1986).

Significantly, the plaintiffs have shown that no meaningful appeal or reapplication process is available to them since all decisions on their appeals or reapplications will ultimately be made by the same INS staff in the Miami District office who have already denied their requests for a medical waiver, under the same "secret" practices, policies and procedures utilized in the defendants' Miami District office. Rodriguez and Lopez contend that since they are indigent and the appeal process and the reapplication process require fees that are beyond their extremely limited means, it is unlikely that they will be unable to obtain review.

Finally, the plaintiffs state that they are concerned that they may not survive long

---

**4.** Although not relied on by the court in determining whether this preliminary injunction should be granted, there is evidence in the record that shows that some of the applicants have been be receiving life-sustaining supplemental income benefits which will, or have been discontinued. The court is concerned that the loss of these benefits will place the plaintiffs in jeopardy.

enough to reapply for citizenship and await the processing of any new application or the processing of any request for appeal on their current applications. Both those processes take approximately two years. The court finds that the plaintiffs have demonstrated irreparable injury because they have shown that in light of their advanced age and infirmities, it is likely that the plaintiffs may not survive the lengthy administrative appeals process and they may also be deprived of an opportunity to be heard on the issues presented by the class complaint.

### C. Harm to the Defendants.

The third factor to consider when assessing a motion for preliminary injunction is whether the threatened injury to the plaintiff outweighs any potential harm to the defendant. The plaintiffs are asking this court to enjoin the defendants from scheduling their final citizenship interviews until after the court has ruled on the issues raised in the class action complaint. In granting the preliminary injunction, the court would merely be preserving the *status quo*. The court finds that the defendants will suffer little or no harm if the citizenship interviews for Lopez and Rodriguez are delayed until after this court has ruled on the merits of this lawsuit.

### D. Public Interest.

The final factor to consider when assessing the propriety of injunctive relief is the public interest. The plaintiffs have presented evidence showing that the defendants are not following their own regulations when evaluating requests for medical waivers and that their practices have frustrated the attempts of naturalization applicants and physicians to comply with these regulations. Public policy concerns therefore weigh in favor of preliminary injunctive relief in order to insure that government agencies follow their own rules and that the plaintiffs will not be deprived of due process.

## VII. POSTING OF SECURITY

Plaintiffs have requested that they not be required to post any cash bond. In spite of the literal language of Rule 65(c) of the Federal Rules of Civil Procedure, this court clearly has the discretion to issue a preliminary injunction without requiring plaintiffs to give security. *See, e.g., Caterpillar, Inc. v. Nationwide Equipment,* 877 F.Supp. 611, 617 (M.D.Fla.1994); *Baldree v. Cargill, Inc.,* 758 F.Supp. 704 (M.D.Fla.1990).

Because plaintiffs in the instant case are indigent and disabled and seek only to vindicate their federal statutory and constitutional rights, this case implicates the public interest and the balance of hardships tips sharply in favor of plaintiffs. Therefore this court does not require plaintiffs to give security. *See Pharmaceutical Soc'y of N.Y. v. Dep't of Soc. Serv.,* 50 F.3d 1168, 1174 (2d Cir.1995); *Crowley v. Local 82 Furniture and Piano Moving, Furniture Store Drivers, Helpers, Warehousemen and Packers,* 679 F.2d 978, 999 (1st Cir.1982), *rev'd on other grounds,* 467 U.S. 526, 104 S.Ct. 2557, 81 L.Ed.2d 457 (1984).

## VIII. CONCLUSION

The plaintiffs have shown a substantial likelihood of success on the merits. The court further finds that in light of their advanced age, poor physical condition, Rodriguez and Lopez are likely to suffer irreparable harm should the preliminary injunction not be issued and that the threat of injury to the plaintiff outweighs the minimal harm, if any, the injunction may cause the defendant. Finally, the court finds that issuance of the preliminary injunction is in the public interest. Accordingly, it is ordered and adjudged that the defendants are enjoined from scheduling the final citizenship interviews for Angela Rodriguez and Josefina Lopez until the court has ruled on the merits of the class action complaint. The court further orders that because of the plaintiffs' health problems and advanced age, discov-

ery in this case will be conducted on an expedited basis. Discovery with respect to the class certification issue must be completed by December 4, 1998. All briefs and dispositive motions concerning the class certification issue must be filed by December 18, 1998. Responses to these briefs and dispositive motions must be filed by December 31, 1998. A hearing on class certification will be set in early January by separate order.